Eric L. SZALOCZI, Michael P. Batzer, Jay Crist, Robert S. Pfeiffer, Allan Wise, Michael Caskey, Roland DeBruyn, Jeffrey Weber, and Bruce Williams, Petitioners

v.

**JOHN R. BEHRMANN REVOCABLE TRUST, Respondent.**

No. 02SC911.

Supreme Court of Colorado,
En Banc.

May 24, 2004.

Holme Roberts & Owen, LLP, David S. Steefel, Michael J. Hofmann, Denver, Colorado, Attorneys for Petitioner.

Benjamin, Bain & Howard, LLC, James W. Bain, Wesley B. Howard, Greenwood Village, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in this case to review the court of appeals decision in *John R. Behrmann Revocable Trust v. Szaloczi*, 74 P.3d 371 (Colo.App.2002).[1] A former shareholder of a closely held corporation, John R. Behrmann Revocable Trust ("the Behrmann Trust"), brought this compensatory damages action in the district court for breach of fiduciary duty and "conspiracy" against the officers and directors of the corporation that sold its assets to another corporation ("compensatory damages action").

The complaint alleges that the "Defendants arranged to take substantially more than [the Behrmann Trust], a minority shareholder in a closed corporation, from the sale of substantially all the corporate assets, by paying themselves as officers rather than as shareholders." The prayer for relief is only for compensatory damages.[2] Having

---

1. The certiorari issue is "Whether the court of appeals erred by holding that a shareholder who dissented from a corporate action and sought the fair value of its shares in a statutory appraisal suit also may maintain legal claims for money damages allegedly arising from the dissented-from transaction."

2. Award of compensatory damages is a legal remedy. *Kirk v. Denver Publ'g. Co.*, 818 P.2d 262, 265 (Colo.1991). Equitable remedies in-

brought this compensatory damages suit, the Behrmann Trust elected, under § 7–113–102(1), 2 C.R.S. (2003), to dissent from the sale and obtain fair value for its shares under the prescribed statutory procedures. When the Behrmann Trust contested the amount of payment the corporation had tendered, the corporation initiated a judicial appraisal suit under § 7–113–301, 2 C.R.S. (2003). In that separate action, now pending review in the court of appeals, another division of the district court—utilizing the services of a special master—set the compensation owed to the Behrmann Trust for its shares ("appraisal action").

The trial court dismissed the Behrmann Trust's action for compensatory damages now before us, ruling that its sole remedy under these circumstances is the statutory appraisal remedy. The court of appeals reversed and reinstated the action. In doing so, the court of appeals relied on the exception to the statute's exclusivity provision contained in § 7–113–102(4), 2 C.R.S. (2003). The statute provides that the shareholder may challenge the "corporate action" if that action is "unlawful or fraudulent with respect to the shareholder or the corporation." [3]

We agree with the trial court and disagree with the court of appeals. We hold that, because the Behrmann Trust failed to bring an action for equitable relief on the basis of illegality or fraud, it has not invoked the exception to the exclusivity provision of the statute's appraisal remedy. Because the Behrmann Trust is bound by the exclusivity provision, the trial court did not err in dismissing this action for compensatory damages. Accordingly, we reverse the judgment of the court of appeals.

## I.

Preston Reynolds & Company, Inc. ("PRC"), was a closely held Colorado corporation engaging in the oil and gas exploration and leasing business. The Behrmann Trust was a minority shareholder of PRC. John Behrmann, the sole trustee of the Behrmann Trust, also served as Chairman of the PRC Board of Directors. On November 1, 1999, the other shareholders of PRC voted to remove Behrmann as Chairman. However, the Behrmann Trust remained a PRC shareholder.

As required by the Colorado Dissenters' Rights Act ("the Act"), PRC provided notice to the shareholders of a meeting on April 17, 2000 to vote on the sale of substantially all of PRC's assets to WBI Production, Inc. ("WBI").[4] In accordance with the Act, the Behrmann Trust delivered written notice to PRC indicating its intent to demand payment for its shares if the WBI sale was effectuated. At the April 17th meeting, the Behrmann Trust voted all of its shares against the sale as required under the Act. However, the majority of shareholders approved the sale.

On April 26, 2000, PRC sent out its dissenters' notice which informed the Behrmann Trust that it was entitled to dissent and must deliver its demand for payment together with the share certificates to PRC.

On May 24, 2000, before the Behrmann Trust delivered its demand for payment, it filed this compensatory damages action against the officers and directors of PRC for breach of fiduciary duty and conspiracy to deprive it of the value of its shares. The complaint requested compensatory damages and did not seek equitable relief. The nature of the complaint is that the other shareholders structured the asset sale for their personal benefit. The Behrmann Trust alleged that the other shareholders, acting in their capacity as officers and directors: (1) withheld information; (2) granted themselves stock options below market value; (3) extended

---

clude actions such as rescission, injunctions, and reformation. Dan B. Dobbs, Law of Remedies §§ 2.1(6), 3.1 (2d ed.1993).

**3.** Section 7–113–102(4), also known as the "exclusivity provision," states:

A shareholder entitled to dissent and obtain payment for the shareholder's shares under this article may not challenge the corporate action creating such entitlement unless the action is unlawful or fraudulent with respect to the shareholder or the corporation.
§ 7–113–102(4).

**4.** Under section 7–113–102, a sale of substantially all of the corporation's assets invokes a shareholder's right to dissent. § 7–113–102(c), 2 C.R.S. (2003).

stock options beyond the expiration dates; (4) negotiated personal employment contracts for themselves in connection with the sale; and (5) arranged to take more from the sale of assets by paying themselves as officers rather than as shareholders. According to the complaint, these events leading up to the sale of the corporate assets, which the Behrmann Trust voted against, affected the value of the Behrmann Trust's interest in the corporation.

On May 26, 2000, two days after the Behrmann Trust filed its compensatory damages action, it demanded payment for its shares in PRC and delivered the trust stock certificates, pursuant to the Act.

On July 7, 2000, PRC paid the Behrmann Trust, in the amount of $6,145,191.31, pursuant to section 7–113–206, 2 C.R.S. (2003). This amount represented PRC's estimate of fair value and accrued interest. The Behrmann Trust accepted this payment, but demanded additional payment from PRC claiming that PRC paid less than fair value for the shares.

In turn, PRC commenced the statutory appraisal action in another division of the district court to determine the fair value of the shares and accrued interest, pursuant to section 7–113–301, 2 C.R.S. (2003). Utilizing the services of a special master, the district court entered its decision regarding the fair value of the Behrmann Trust shares. The special master found that the Behrmann Trust was entitled to an additional $681,174 for the fair value of its shares. The district court adopted the special master's findings and conclusions of law. The Behrmann Trust is currently challenging the adequacy of that award by appeal to the court of appeals.

The trial court dismissed the compensatory damages action now before us. In doing so, it ruled that the appraisal remedy under sections 7–113–101 to –301 of the Act is the Behrmann Trust's sole remedy under the circumstances. Relying on Delaware Law, the court of appeals reversed. It agreed that the Behrmann Trust could not "pursue a separate action for certain types of mismanagement." But, it characterized the complaint as alleging a claim for "constructive

fraud regarding actions unrelated to the WBI sale." *John R. Behrmann Revocable Trust,* 74 P.3d at 375. The court of appeals did not address whether the complaint requested equitable relief or the effects of requesting compensatory damages; it simply construed the breach of fiduciary duty allegations as an implied allegation of "constructive" fraud and concluded that the cause of action· fell within the exception for fraud, which the trial court should not have dismissed.

The issue in this case is whether, under the Colorado Dissenters' Rights Act, a shareholder who dissents from a sale of corporate assets and seeks payment for the fair value of its shares may also pursue a separate claim for compensatory damages against the officers and directors who acted for the corporation in approving the sale.

## II.

We agree with the trial court and disagree with·the court of appeals. We hold that, because the Behrmann Trust failed to bring an action for equitable relief on the basis of illegality or fraud, it has not invoked the exception to the exclusivity provision of the statute's appraisal remedy. Because the dissenting shareholder is bound by the exclusivity provision, the trial court did not err in dismissing this action for compensatory damages. Accordingly, we reverse the judgment of the court of appeals.

### A. Standard of Review

▮ The issue before us requires construction of the Act's exclusivity provision. This is a question of law we review de novo. *Leonard v. McMorris,* 63 P.3d 323, 326 (Colo. 2003). We must construe the statute to effectuate the General Assembly's intent; in doing so, we examine the statute as a whole, harmonizing where possible all of its parts. *Id.*

▮ In interpreting our statute, we draw upon fundamental principles of statutory construction. When our statute is patterned upon the law of other jurisdictions or model codes, we may draw upon applicable

precedent in conducting our analysis. *Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 368 (Colo.2003). "Because the legislature has consistently relied on the [Model Business Corporation Act] when fashioning the corporate laws of this state we find the views of the MBCA on this issue to be persuasive." *Id.* We assume that the General Assembly was aware of the prior decisional law of other jurisdictions that the drafters of the MBCA relied on when enacting the MBCA. *See Semendinger v. Brittain*, 770 P.2d 1270, 1272 (Colo.1989) ("The General Assembly is presumed to be cognizant of prior decisional law when enacting or amending statutes."). Moreover, we presume that the General Assembly's intent is the same as the intent of the MBCA drafters. *Pueblo Bancorporation*, 63 P.3d at 368 (citing *Copper Mountain Inc. v. Poma of America, Inc.*, 890 P.2d 100 (Colo.1995)). Thus, we now examine the relevant case law that the MBCA drafters relied upon when drafting the exclusivity provision.

## B. Colorado Dissenters' Rights Act

The Colorado Dissenters' Rights Act sets forth a special statutory procedure by which a shareholder may dissent from certain corporate actions and obtain payment of fair value for its shares; such corporate actions include a sale of the corporation's assets. § 7–113–102(1)(c) & (d). We refer to this procedure as the statutory appraisal remedy.

### 1. Procedures

This special statutory design sets out a series of deadlines and procedures to ensure that the corporation can timely pursue new opportunities while minority shareholders are promptly compensated for the fair value of their shares.

If a proposed corporate action giving rise to dissenters' rights is submitted to a vote at a shareholder meeting, the corporation must give notice to all shareholders. § 7–113–201(1). The notice must include a statement that all shareholders are entitled to dissent. *Id.* Before the vote is taken, shareholders who dissent must give written notice of their intent to demand payment in the event the proposed corporate action is effectuated. § 7–113–202(1)(a).

If the corporate action is subsequently authorized, the corporation—no later than ten days after the effective date of the corporate action—must give written notice to all shareholders who are entitled to demand payment. § 7–113–203(1). The notice must include, among other matters, a date by which the corporation must receive the payment demand. § 7–113–203(2)(e). This date cannot be less than thirty days after this notice is given. *Id.*

Upon receiving such notice, the dissenting shareholder must demand payment. § 7–113–204(1)(a). After the effective date of the corporate action, the shareholder has only the right to receive fair value for the shares. § 7–113–204(2). "Fair value" means the value of the dissenter's shares "immediately before the effective date of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action except to the extent that exclusion would be inequitable." § 7–113–101(4). The demand for payment is irrevocable unless: (1) the effective date of the corporate action does not occur within sixty days after the date set by the corporation; or (2) the corporation fails to make payment within sixty days after the date set by the corporation for receiving the payment demand. § 7–113–204(3).

Upon the effective date of the corporate action, or upon receipt of the payment demand, whichever is later, the corporation must pay each dissenting shareholder the amount that the corporation estimates to be the fair value of the shareholder's shares. § 7–113–206(1). If a dissenting shareholder is dissatisfied with the payment, it must give written notice of its estimate of fair value. § 7–113–209(1).

Within sixty days after receiving the dissenting shareholder's estimate of fair value, the corporation may commence an action in court to determine the fair value of the shares. § 7–113–301(1). If the corporation does not commence the proceeding within this time period, it must pay each dissenting shareholder the amount demanded. *Id.* The jurisdiction of the court is plenary and exclu-

sive. § 7–113–301(4).[5] The dissenting shareholder is entitled to fair value for its shares as determined by the court. § 7–113–301(5).

### 2. Exclusivity Provision

Once the shareholder elects to dissent and demand payment, the Act prohibits a challenge to the corporate action except for a narrow exception for unlawful or fraudulent conduct. Section 7–113–102(4), also known as the "exclusivity provision," states:

> A shareholder entitled to dissent and obtain payment for the shareholder's shares under this article may not challenge the corporate action creating such entitlement *unless the action is unlawful or fraudulent with respect to the shareholder or the corporation.*

§ 7–113–102(4) (emphasis added).

Whether the exception permits a dissenting shareholder to bring an action for compensatory damages in addition to invoking the statutory appraisal remedy is a matter of first impression in this court. Thus, we now turn to the Act and case law to construe this provision.

In 1993, the General Assembly repealed the entire Colorado Corporate Code and enacted the Revised Model Business Corporation Act of 1984 ("MBCA"). *Pueblo Bancorporation,* 63 P.3d at 368. In doing so, the General Assembly adopted the MBCA's exclusivity provision. *Compare* § 7–113–102(4), *with Model Bus. Corp. Act* § 13.02(b)(1984). The official comment to the MBCA explains that the Act "basically adopts the New York formula as to exclusivity of the dissenters' remedy...." *Model Bus. Corp. Act* § 13.02 cmt. at 1366 (1984).

The MBCA drafters designed the exclusivity section to "recognize and preserve the principles that have developed in the case law of Delaware, New York and other states with regard to the effect of dissenters' rights on other remedies of dissident shareholders." *Id.* at 1367. The official comment summarizes the principles that developed from this case law:

> The [appraisal] remedy is the exclusive remedy unless the transaction is "unlawful" or "fraudulent".... If the corporation attempts an action in violation of the corporation law on voting, in violation of clauses in articles of incorporation prohibiting it, by deception of shareholders, or in violation of fiduciary duty ... the court's freedom to intervene should be unaffected by the presence or absence of dissenters' rights under this chapter.

*Id.* at 1366.

The "New York formula" provides that appraisal is the exclusive remedy, except that an individual may bring a proceeding in equity when corporate action is alleged to be fraudulent or illegal. *Breed v. Barton,* 429 N.E.2d 128, 129–31 (N.Y.1981); *Theodore Trust U/A Dated December v. Smadbeck,* 277 A.D.2d 67, 717 N.Y.S.2d 7, 8 (2000).[6] The dissenting shareholder must seek some form of equitable relief; it is not sufficient to plead a cause of action over which equity has jurisdiction. *Walter J. Schloss Assocs. v. Arkwin Industries, Inc.,* 61 N.Y.2d 700, 472 N.Y.S.2d 605, 460 N.E.2d 1090, 1090, (1984) (adopting dissent of *Walter J. Schloss Assocs. v. Arkwin Industries Inc.,* 90 A.D.2d 149, 455 N.Y.S.2d 844, 847, 850 (1982)(Mangano, J., dissenting)).

Moreover, dissenting shareholders cannot obtain relief in the form of compensatory damages. *Breed,* 444 N.Y.S.2d 609, 429 N.E.2d at 130. Rather, "any monetary recovery, if available at all, can only be ancillary to a grant of some form of equitable relief" from the corporate action. *Id.* at 131; *Burke v. Jacoby,* 981 F.2d 1372, 1380 (2d Cir.1992) (interpreting New York Law and dismissing the dissenting shareholder's complaint because it made no attempt to obtain traditional equitable relief but only requested compensatory and punitive damages). The

---

**5.** The court can hear both the appraisal action and an action for equitable relief, if brought.

**6.** New York's exclusivity provision is the same today as it was when the MBCA was drafted. N.Y. Business Corporation Law § 623(k)(McKinney 1981); *see* N.Y. Business Corporation Law

§ 623(k)(McKinney 2003). That provision states that a dissenting shareholder can "bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is unlawful or fraudulent as to him." *Id.*

New York Court of Appeals explained that the policy behind prohibiting an action for compensatory damages, in addition to invoking the statutory appraisal remedy, is to avoid duplicate damages. The appraisal action is the forum for full monetary recovery of the dissenting shareholder's shares:

Allowing the prosecution of a legal action for damages after the exercise of the right of appraisal would be unnecessarily duplicative in that full and proper monetary recovery of the fair value of the dissenters' shares may be obtained in the appraisal proceeding.

*Breed,* 444 N.Y.S.2d 609, 429 N.E.2d at 130.

New York and Delaware share the same basic principle that the exclusivity exception to the statutory appraisal remedy permits equitable relief and does not allow a separate claim for compensatory damages. *See Weinberger v. UOP, Inc.,* 457 A.2d 701, 714 (Del. 1983); *Ryan v. Tad's Enters., Inc.,* 709 A.2d 682, 698–99 (Del.Ch.1996).

Delaware has a long history of equitable actions in the corporate setting. Where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved, a dissenting shareholder may bring an equitable action. *Weinberger,* 457 A.2d at 714.[7] In Delaware, a dissenting shareholder may receive rescissory damages in an equitable action. *Id.* In this situation, the court awards rescissory damages when a traditional form of equitable relief, like rescission, is not feasible.[8] *Nagy v. Bistricer,* 770 A.2d 43, 56 (Del.Ch.2000) ("Only in an equitable action can [the plaintiff] possibly obtain rescission or rescissory damages.").

Nevertheless, where the dissenting shareholder seeks an appraisal and equitable relief, the Delaware court limits the dissenting shareholder to a single recovery judgment. *Cede & Co. v. Technicolor, Inc.,* 542 A.2d 1182, 1191 (Del.1988); *see also* William M. Fletcher, Cyclopedia Corporations § 5906.30 (perm.ed., rev.vol.2000). Moreover, Delaware law, like New York law, prevents a dissenting shareholder from maintaining an action for compensatory damages in addition to the statutory appraisal remedy.

The MBCA specifically states that it follows the New York formula. The official comment referred to the court's equitable powers when it stated that "the court's freedom to intervene should be unaffected by the presence or absence of dissenters' rights." § 13.02 at 1366. In making this statement, the drafters were summarizing the principles from the New York and Delaware cases that only an equitable action may be brought under the exception to the exclusivity provision of the appraisal statute, not an additional claim for compensatory damages to supplement the appraisal remedy. *Grace v. Rosenstock,* 228 F.3d 40, 50 (2d Cir.2000) (stating that New York only permits an "appropriate" equitable action under the illegality or fraud exception to the exclusivity provision).

In adopting the MBCA, which in turn adopted New York's exclusivity provision, our General Assembly confirmed that the statutory appraisal remedy provides the dissenting shareholder full and proper monetary recovery for the value of its shares. *Breed,* 444 N.Y.S.2d 609, 429 N.E.2d at 130. Additionally, by adopting this special statutory proceeding which contains strict deadlines

---

**7.** In *Weinberger,* the minority shareholder sought to rescind the merger, or in the alternative, rescissory damages. The court held that the long completed transaction was too involved to undo and held that the Chancellor had discretion to award relief in the form of monetary damages. Although the question of whether the shareholder could recover both the appraisal remedy and legal damages was not before the court, the court's opinion points to appraisal as being the primary financial remedy. *Weinberger v. UOP, Inc.,* 457 A.2d 701, 714 (Del.1983).

**8.** Rescission is a traditional form of equitable relief that "restores the parties to the status quo

before sales of the shares were made...." *Lynch v. Vickers Energy Corp.,* 429 A.2d 497, 501 (Del. 1981) (reversed on other grounds). When a party recovers money damages in connection with rescission, those damages are more accurately called restitution:

The term rescission refers to the avoidance of the transaction or the calling off of the deal, and not to the particular form of restitution that may be granted once the transaction is avoided.... Very commonly the restitution granted when the term rescission is used is restitution in money.

Dobbs, *supra,* § 4.3(6).

and detailed procedures, the General Assembly intended to allow corporations to continue with business even though minority shareholders dissented from the corporate action. In order to provide a speedy and fair resolution, the legislature provided the appraisal remedy. In doing so, it prevented dissenting shareholders from challenging the corporate action based on the common law, unless such actions were unlawful or fraudulent and merit equitable relief. This construction of the exception to the exclusivity provision conforms to the intent of the General Assembly. § 7–113–102(4).

## C. Application of the Dissenters' Rights Statute

### 1. The Behrmann Trust's Failure to Seek Equitable Relief

The Behrmann Trust argues that the officers and directors engaged in self-dealing in connection with the sale. Specifically, it argues that the officers and directors negotiated their own employment agreements with WBI, granted themselves benefits in connection with the sale that created a conflict of interest, and withheld information about the sale in the proxy notice.

 The nature of the complaint is that the Behrmann Trust would have been paid more money for the value of its shares if the officers and directors had not breached their fiduciary duty in connection with the sale of the assets. However, having elected the statutory appraisal remedy and not having sought equitable relief from the corporate action, the Behrmann Trust has triggered the exclusivity provision.[9] A dissenting shareholder may not seek compensatory damages in addition to the appraisal remedy when the complaint "boils down to nothing more than a complaint about stock price." *Grace Brothers, Ltd. v. Farley Industries, Inc.*, 264 Ga. 817, 821, 450 S.E.2d 814 (1995).

The complaint in this case does not seek to rescind the sale. *Walter J. Schloss Assocs.*, 455 N.Y.S.2d at 852 (Mangano, J., dissenting

opinion) (dismissing complaint that alleged fraud and breach of fiduciary duty by majority shareholder because "there [was] a fatal absence of any primary request for equitable relief.") (citations omitted). Other forms of equitable relief might have been injunction, reformation and rescission of instruments, and specific performance of contracts. *Id.* at 851 n. 4. The complaint does not seek any of these.

 We have long held that equity will not act if there is a plain, speedy, adequate remedy at law. *Hoffman v. Colorado State Bd. of Assessment Appeals*, 683 P.2d 783, 787 n. 13 (Colo.1984); *People ex rel. Winbourn v. District Court*, 87 Colo. 316, 323, 287 P. 849, 850 (1930). In its compensatory damages action, the Behrmann Trust seeks to receive additional compensation for the fair value of its shares that it has already received in the appraisal action. The statutory appraisal remedy provides an adequate legal remedy for this cause of action.

### 2. Pre-existing Shareholder Claims

The Behrmann Trust filed this compensatory damages action two days before it tendered its shares in PRC and dissented from the asset sale. Because it filed the compensatory damages action before it dissented, the Behrmann Trust argues that the Act does not extinguish or even address pre-existing shareholder claims. The Behrmann Trust relies on section 7–113–204(2) for the proposition that a dissenting shareholder retains the right to bring fiduciary claims against directors and officers even after the effective date of the proposed corporate action giving rise to the shareholder's right to dissent.

The officers and directors argue that section 7–113–204(2) is plainly written to provide that a dissenting shareholder gives up all the rights of a shareholder but the right "to receive payment for the shares." § 7–113–204(2). The court of appeals agreed with the officers and directors in this regard, holding that, although the Behrmann Trust argued

---

**9.** The court of appeals held that the complaint alleged constructive fraud and thus fell within the exception to the exclusivity rule. However, it is not enough to plead a cause of action over

which equity has jurisdiction; the dissenting shareholder must request equitable relief. *Walter J. Schloss Assocs.*, 455 N.Y.S.2d at 850.

that it has an action separate and distinct from the appraisal action, the "trust surrendered its shares in PRC two days after it filed [the compensatory damages action] and, thus, lost its right to sue for breach of fiduciary duty through mismanagement of assets, self-dealing, waste, or looting." *John R. Behrmann Revocable Trust*, 74 P.3d at 374. The court of appeals held, and we agree, that under section 7–113–204(2), the appraisal remedy provided the Behrmann Trust with an exclusive remedy.[10]

Section 7–113–204(2) states:

A shareholder who demands payment in accordance with subsection (1) of this section retains all rights of a shareholder, except the right to transfer the shares, until the effective date of the proposed corporate action giving rise to the shareholder's exercise of dissenters' rights and *has only the right to receive payment for the shares after the effective date of such corporate action.*

§ 7–113–204(2) (emphasis added).

After the effective date of the corporate action, the dissenting shareholder's only right is to receive payment for its shares. § 7–113–204(2); *Breed*, 444 N.Y.S.2d 609, 429 N.E.2d at 129 ("When [shareholders] exercise the right under [the appraisal statute] to have their stock appraised in a judicial proceeding, they abandoned their alternative rights as shareholders."). This section, when read together with the exclusivity provision, demonstrates that the General Assembly intended to prevent dissenting shareholders, who invoke the statutory appraisal remedy, from maintaining compensatory claims in addition to the appraisal action. § 7–113–204(2); Robert J. Brown, Jr., Colorado Corporation Law & Practice § 10.3 (1990) (once the corporate action is effectuated, "dissenting shareholders no longer have rights as shareholders, but have only the right to obtain payment for their shares.")

Thus, even though the Behrmann Trust filed its compensatory damages action two days before it tendered its shares, those pre-existing claims must be dismissed unless they fall within the narrow exception to the statute's exclusivity provision. As discussed above, the Behrmann Trust did not request an equitable remedy against the corporate action as its primary form of relief. Thus, the trial court properly dismissed its compensatory damages action.

### 3. Action Against Directors and Officers

The Behrmann Trust argues that section 7–113–102(4) does not bar its compensatory damages action because PRC is not a party and this action is against the officers and directors. The officers and directors argue that section 7–113–102(4) is not "a defendant-identifying provision that applies only to suits against the corporation itself," but applies when the corporation is the alleged victim. Thus, the officers and directors contend that the statute's exclusivity provision covers actions against the corporation, officers, and directors. We agree.

The relevant section of the exclusivity provision states that a shareholder entitled to dissent "may not *challenge the corporate action* creating such entitlement unless the action is unlawful or fraudulent ...." § 7–113–102(4) (emphasis added). New York has always barred claims against officers and directors under the exclusivity provision if the complaint does not fall within the exception.

In the New York *Breed* and *Burke* cases, the minority shareholders brought an action against the directors of the corporation. *Burke v. Jacoby*, 981 F.2d 1372, 1374 (2d Cir.1992)(shareholder brought claims against the corporation's former president and board chairman, Robert Jacoby); *Breed v. Barton*, 54 N.Y.2d 82, 444 N.Y.S.2d 609, 429 N.E.2d 128, 129 (1981)(shareholders brought an action against individual, George Barton). In both cases, the court held that the exclusivity

---

10. Despite this ruling, the court of appeals reversed the trial court's order because it then held that the Behrmann Trust's complaint fell within the exception for unlawful or fraudulent conduct as to "actions unrelated to the sale." 74 P.3d at 374. The court of appeals did not identify which allegations of the complaint assert such "unrelat-

ed actions." In any event, the complaint's recitation of corporate actions prior to the sale include the granting of bonuses and stock options to the officers and directors as events devaluing its shareholder interest, which is the subject of the statutory appraisal remedy.

rule barred their claims. *Burke*, 981 F.2d at 1380–81; *Breed*, 444 N.Y.S.2d 609, 429 N.E.2d at 131.

Similarly, in more recent New York cases where shareholders brought actions against individuals, New York courts have not distinguished between those claims and claims brought against the corporation. *Theodore Trust*, 717 N.Y.S.2d at 7–8 (dismissing complaint against individuals because a dissenting shareholder brought only an action seeking money damages and the court held that the exclusivity rule prohibited this); *In re Lazar*, 262 A.D.2d 968, 692 N.Y.S.2d 539, 540–41 (N.Y.App.Div.1999) (permitting dissenting shareholders to bring claims against directors because their complaint sought equitable relief as its primary form of relief).

█ The drafters of the MBCA adopted the New York formula, and New York law is clear that the Act applies to actions brought against officers and directors. Thus, the statute's exclusivity provision prohibits the Behrmann Trust from bringing this action.

### 4. Request to Amend Complaint

In this court, the Behrmann Trust argues for the first time that we should remand the case to the trial court and instruct the court to permit it to amend its complaint. The Behrmann Trust alleges that its complaint put the officers and directors on notice that it was seeking equitable relief.

█ The Behrmann Trust could have amended its complaint in the trial court under C.R.C.P. 15(a). *See Davis v. Paolino*, 21 P.3d.870, 873 (Colo.App.2001) ("For purposes of this rule, a motion to dismiss does not constitute a responsive pleading.").[11] Because the Behrmann Trust seeks to amend its complaint for the first time on appeal, we will not grant the leave to amend its com-

plaint. *See Fladung v. City of Boulder*, 165 Colo. 244, 248, 438 P.2d 688, 690 (1968) (holding that the plaintiff was precluded from raising the issue for the first time on appeal.)[12]

### III.

█ The complaint seeks compensatory damages in addition to the statutory appraisal remedy it invoked against the corporate action. When the Behrmann Trust elected to dissent from the corporate sale, and obtain payment of fair value for them, without seeking equitable relief from the corporate action, it fell within the exclusivity provision of the statutory appraisal remedy and not its exception. Having surrendered its shareholder status, it may not, in the guise of a suit against the officers and directors, maintain a suit for pre-existing claims it may have had as a shareholder. The trial court properly construed the complaint in this action as alleging that a series of acts preceding the sale of assets had the effect of devaluing its shares; these are matters encompassed by the appraisal remedy. Accordingly, we reverse the judgment of the court of appeals and return this case to that court with directions to reinstate the trial court's dismissal order.

---

11. C.R.C.P. 15(a) states:

 A party may amend his pleading once as a matter of course at any time before a responsive pleading is filed.... Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party.

12. In Delaware, even where rescissory damages have been timely sought in equity for breach of fiduciary duty, in addition to the appraisal remedy, delay in pursuing that relief can defeat the equitable claim. *Ryan v. Tad's Enters., Inc.*, 709 A.2d 682, 698–99 (Del.Ch.1996). Because the Behrmann Trust did not seek an equitable remedy, we need not decide in this case whether Colorado, applying the exception to the exclusivity provision of the statutory appraisal remedy, might recognize rescissory damages as a remedy in addition to the payment of fair value for the dissenting shareholder's shares.