2006-NMCA-049

133 P.3d 875

**Rory A. McMINN, Plaintiff–Appellant/Cross–Appellee,**

v.

**MBF OPERATING, INC., a New Mexico Corporation, Defendant–Appellee/Cross–Appellant.**

**No. 25,006.**

Court of Appeals of New Mexico.

March 1, 2006.

Certiorari Granted, No. 29,725, April 20, 2006.

Sanders, Bruin, Coll & Worley, P.A., Clay H. Paulos, Ian D. McKelvy, Roswell, NM, for Appellant/Cross–Appellee.

Tucker Law Firm, P.C., Steven L. Tucker, Santa Fe, NM, for Appellee/Cross–Appellant.

## OPINION

WECHSLER, Judge.

{1} This case involves the contested merger and reformation of a small, closely held corporation, MBF Operating, Inc. (MBF), pursuant to a cash out of a minority shareholder, Plaintiff Rory A. McMinn. After a jury trial, judgment was entered in favor of Plaintiff. Plaintiff appeals the trial court's refusal to award attorney fees and contends that the trial court erred in excluding certain testimony of his expert, Dr. Nini. Defendant MBF cross appeals, arguing that it was entitled to summary judgment because Plaintiff failed to avail himself of the exclusive appraisal remedy set forth in NMSA 1978, §§ 53–15–3 to –4 (1983), for dissenting shareholders. We agree with MBF and reverse the judgment. In light of our disposition, we do not reach the issues raised in Plaintiff's appeal.

## BACKGROUND

{2} The three founding shareholders and directors of MBF, a New Mexico corporation engaged in the business of rendering pipeline

inspection services, were Plaintiff, Frank L. Sturges, and Mark W. Daniels. They formed the corporation in 1992. All three shareholders devoted significant time to MBF and agreed to use their "best efforts to make the company successful" so that all of them could share in the profits. The shares were divided equally among the three shareholders. Until 2001, the shareholders received equal salaries, bonuses, and benefits and, when voting as directors, made all decisions unanimously. MBF never declared dividends because to do so would result in double taxation.

{3} In 2001, Plaintiff applied for, and achieved, appointment to the Public Regulation Commission (PRC) effective May 1, 2001. The PRC regulates pipelines and therefore regulates MBF. Due to the potential conflict of interest between the PRC and MBF, Plaintiff resigned his employment with MBF effective April 30, 2001. For the same reason, Plaintiff placed his MBF shares into a blind trust effective April 30, 2001. He chose Bruce Ritter as the trustee of the blind trust (Trustee).

{4} After his resignation, Plaintiff never performed any services for MBF. He could no longer be employed by MBF and could no longer be on the Board of Directors. Trustee requested that Sturges and Daniels buy out Plaintiff's interest in MBF. Trustee also requested that the corporation institute a dividend policy now that it had a passive shareholder, but such a policy was never adopted.

{5} Trustee informed Sturges and Daniels that, if they did not want to make a fair offer for the stock, liquidation of the company might be an alternative. On September 19 and November 14, 2001, Trustee's counsel informed MBF that he was still considering liquidation if an agreement could not be reached as to a fair price and that he had begun to prepare pleadings to institute such an action. If MBF was liquidated, Plaintiff was likely to receive less than $20,000.

{6} MBF, acting through its directors, Sturges and Daniels, decided to effect a cash-out merger in order to resolve the stalemate with Plaintiff. A second corporation, MBF Operating Acquisition Corporation (Acquisition), was created solely for the purpose of reorganizing the ownership of MBF and paying Plaintiff the value of his MBF shares. Sturges and Daniels were the sole shareholders and directors of Acquisition. Under the merger, Plaintiff's shares would be cancelled and Acquisition would cease to exist. After merger, the new company, still named MBF Operating, Inc., would be owned by Daniels and Sturges alone. MBF determined that Plaintiff's one-third share of the company was $247,605.48 and, after subtracting one-third of the shareholder debt, MBF agreed to purchase Plaintiff's shares for $134,411.38.

{7} On March 29, 2002, Trustee received written notice from MBF of the special meeting of shareholders for a vote on the merger set for April 18, 2002, along with the plan of merger and the agreement of directors in lieu of special meeting. The plan of merger included a price of $743.56 per share less shareholder debt.

{8} On April 9, 2002, counsel for Trustee wrote MBF's counsel requesting information on the statutory authority for the merger and the manner in which the price was determined. MBF's counsel responded, citing NMSA 1978, § 53–14–1 (1975) (describing the statutory procedures for corporate mergers), and explaining the determination of the price. On April 17, 2002, articles of incorporation were filed forming Acquisition with Sturges and Daniels as the sole directors.

{9} At a meeting on April 18, 2002, the shareholders of MBF approved the plan of merger by a vote of 666 shares in favor and the 333 shares owned by the trust on behalf of Plaintiff opposed to the merger. Acquisition approved the plan of merger, and it merged out of existence. The articles of merger were duly filed, the merger was approved by the PRC, and a certificate of merger was issued.

{10} On April 19, 2002, Trustee's counsel wrote a letter to MBF's counsel reiterating his objection to the merger on the grounds that it was not authorized by statute and that it grossly underestimated the value of Plaintiff's shares. Trustee requested issuance of shares in the surviving corporation, but was refused. On April 30, 2002, MBF wrote a

letter to Plaintiff's counsel, advising that because Plaintiff had made no written demand for payment of fair value, he was bound by the terms of the merger. It enclosed a certified check for $134,411.38 for payment of Plaintiff's shares in accordance with the plan of merger. Plaintiff rejected the check, claiming that no statute authorized the majority shareholders to force a purchase of the minority's shares. On September 6, 2002, Plaintiff filed a complaint for money damages alleging breach of obligations MBF owed shareholders, breach of fiduciary duties, oppressive conduct, prima facie tort, unjust enrichment, and punitive damages. The complaint named Sturges, Daniels, Acquisition, and MBF as defendants.

{11} Defendants filed two separate motions for summary judgment, contending that because Plaintiff was essentially claiming that he was not paid fair value for his stock and that he objected to the merger, Plaintiff's exclusive remedy was an appraisal proceeding pursuant to Section 53–15–4 (describing the rights of minority shareholders who dissent to corporate actions, including mergers). Defendants claimed that Plaintiff was bound by the terms of the merger because he failed to comply with the provisions of Section 53–15–4. Defendants also moved to strike the jury demand on the ground that there is no right to a jury trial in an appraisal proceeding. After Defendants filed the second motion for summary judgment and a motion to dismiss, the trial court dismissed the complaint against Sturges, Daniels, and Acquisition. Although Plaintiff attempted to appeal the dismissal of Sturges and Daniels, that appeal was dismissed for untimely filing.

{12} The trial court denied summary judgment as to MBF and denied the motion to strike the jury demand. The claims against MBF were tried to a jury on the overarching claim of breach of fiduciary duty. The jury awarded Plaintiff $864,000 in compensatory damages and $20,000 in punitive damages.

**STANDARD OF REVIEW**

{13} The issue of whether Section 53–15–4 provides the exclusive remedy for dissenting shareholders against a corporation is one of statutory interpretation that we review de novo. *See N.M. Dep't of Labor v.* *A.C. Elec., Inc.,* 1998–NMCA–141, ¶ 8, 125 N.M. 779, 965 P.2d 363; *Morgan Keegan Mortgage Co. v. Candelaria,* 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066. If the appraisal remedy excludes some, but not all, potential claims of a dissenting shareholder, the issue of whether all of the claims asserted fall within the exclusivity of the appraisal remedy requires an application of law to the facts, which is also subject to de novo review. *Crutchfield v. N.M. Dep't of Taxation & Revenue,* 2005–NMCA–022, ¶ 16, 137 N.M. 26, 106 P.3d 1273 (holding that "[i]nterpretation of statutes and their application to facts require[s] de novo review").

{14} We begin by reviewing the rights of minority shareholders and then discuss the exclusivity of the relevant statutes by examining their language and intent and by considering how other jurisdictions with similar statutes have applied exclusivity. We then discuss how allegations of fraud or unlawful conduct relate to exclusivity.

**STATUTORY REMEDIES OF MINORITY SHAREHOLDERS**

{15} "At common law, the unanimous consent of shareholders was required to effect a corporate merger." *Smith v. First Alamogordo Bancorp, Inc.,* 114 N.M. 340, 342, 838 P.2d 494, 496 (Ct.App.1992). The common law was changed by statutes allowing shareholders to approve mergers by less than unanimous vote. *Id.; see Stringer v. Car Data Sys., Inc.,* 314 Or. 576, 841 P.2d 1183, 1184 (1992) (en banc) ("The general rule today is that decision-making by the majority must take precedence over the objection of a lone dissenter."). Statutes have conferred upon the dissenting minority the right to force the corporation to buy out the minority interest in the corporation in order to avoid oppression of the dissenting minority shareholder and to compensate the minority for the loss of its traditional common law veto power. *Smith,* 114 N.M. at 342–43, 838 P.2d at 496–97. Appraisal statutes allow a dissenting shareholder to obtain the fair cash value of the shareholder's stock. *See id.; Stringer,* 841 P.2d at 1184 ("The linchpin of a dissenter's protection in merger cases is found in the statutory appraisal remedy.").

{16} Section 53–15–3 affords a shareholder the right to dissent from a proposed merger. It provides, in part, that "[a]ny shareholder of a corporation may dissent from, and obtain payment for the shareholder's shares in the event of, ... any plan of merger or consolidation to which the corporation is a party." Section 53–15–3(A)(1). A shareholder wishing to dissent from a proposed merger must comply with the provisions set forth in Section 53–15–4(A) by filing, "prior to or at the meeting of shareholders at which the proposed corporate action is submitted to a vote, a written objection to the proposed corporate action." *Id.* If, despite the dissenting votes, a requisite majority approves the merger, a dissenting shareholder may pursue a right to appraisal under the provisions of Section 53–15–4(A), which require the shareholder to "within ten days after the date on which the vote [is] taken ... make written demand on the corporation ... for payment of the fair value of the shareholder's shares." *Id.* If a shareholder makes such a demand, the corporation must make a written offer to the shareholder to pay for the shares at a "price deemed by the corporation to be the fair value thereof." Section 53–15–4(C). If the fair value is contested after thirty days, either the corporation or the shareholder may institute an appraisal proceeding. Section 53–15–4(E).

{17} A shareholder who fails to make the requisite statutory demand within the prescribed period is "bound by the terms of the proposed corporate action." Section 53–15–4(A). Further,

> [a] shareholder of a corporation who has a right under this section to obtain payment for his shares shall have no right at law or in equity to attack the validity of the corporate action that gives rise to his right to obtain payment, nor to have the action set aside or rescinded, except when the corporate action is unlawful or fraudulent with regard to the complaining shareholder or to the corporation.

Section 53–15–3(D).

## EXCLUSIVITY OF THE STATUTORY APPRAISAL REMEDY

■ {18} "The guiding principle of statutory construction is that a statute should be interpreted in a manner consistent with legislative intent." *Hovet v. Allstate Ins. Co.,* 2004–NMSC–010, ¶ 10, 135 N.M. 397, 89 P.3d 69. "To determine legislative intent, we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Id.* The plain language of Sections 53–15–3 and 53–15–4 allows a shareholder to dissent and obtain the fair value of his or her stock, but the dissenter cannot prevent or undo the merger in the absence of fraud or illegality. *Cf. Lett v. Westland Dev. Co.,* 112 N.M. 327, 330 n. 4, 815 P.2d 623, 626 n. 4 (1991) (noting that "the [appraisal] remedy was intended to be exclusive" and therefore a dissenting shareholder "has no right at law or in equity to attack the validity of the corporate action"). In this case, it is undisputed that Plaintiff never made the statutory demand required by Section 53–15–4(A) but instead "elected not to go under the appraisal remedy." As we discuss below, we conclude that Plaintiff's failure to proceed under Section 53–15–4 would normally bar any additional litigation. However, Plaintiff is contending that the exception for fraud or unlawful action applies. We consider the intent of the legislature in adopting Sections 53–15–3 and 53–15–4, because the exception for fraud or unlawful action renders the statute less than perfectly clear. *See Cummings v. X–Ray Assocs. of N.M., P.C.,* 1996–NMSC–035, ¶¶ 44–45, 121 N.M. 821, 918 P.2d 1321 (indicating that it is rare for any statute to be utterly free from ambiguity and that the task of the courts is always to search for and give effect to legislative intent).

## LEGISLATIVE INTENT

■ {19} In determining whether a statute should be interpreted as providing an exclusive remedy, we consider whether the statute provides new rights and duties from those existing at common law and whether there is any indication in the statute that the legislature intended the statutory remedy to be exclusive, thus preempting common law remedies. *See Gutierrez v. Sundancer Indian Jewelry, Inc.,* 117 N.M. 41, 46–47, 868 P.2d 1266, 1271–72 (Ct.App.1993). Whenever a statute creates a new right and remedy not

provided at common law, there is a presumption that the remedy is exclusive. *See Hovet,* 2004–NMSC–010, ¶ 28, 135 N.M. 397, 89 P.3d 69 ("[I]f a statute creates a new right for protection of the public where none existed before and at the same time provides an adequate remedy for enforcement of the right created, the remedy thus afforded is exclusive.") (internal quotation marks and citation omitted); *Gutierrez,* 117 N.M. at 46, 868 P.2d at 1271 ("When a statute creates a new right or imposes a new duty, having no counterpart in common law, the remedies provided in the statute are generally deemed to be exclusive and not cumulative."). The application of these considerations leads us to a presumption of exclusivity. Sections 53–15–3 and 53–15–4 provide a dissenting shareholder with a new right and create an appraisal remedy that was not recognized at common law. *See Smith,* 114 N.M. at 343, 838 P.2d at 497 (holding that "[t]he right to dissent from a merger ... and be paid fair value is a new right that did not exist at common law"). Plaintiff admits that the appraisal "statute limits a dissenting shareholder to that remedy, except if the action is unlawful or fraudulent." Although Plaintiff suggests that New Mexico's appraisal remedy should not be exclusive because it does not provide the full panoply of remedies available at common law for breach of fiduciary duty, he does not cite, and we are not aware of, contrary evidence of legislative intent that would rebut the presumption of exclusivity. We therefore conclude that the legislature did intend the appraisal remedy to be exclusive.

**CONSISTENCY WITH OTHER JURISDICTIONS**

{20} Because the question of the exclusivity of the remedy set forth in Section 53–15–4 is an issue of first impression in New Mexico, we test this conclusion against the holding of cases in other jurisdictions. *E.g., Kimura v. Wauford,* 104 N.M. 3, 6, 715 P.2d 451, 454 (1986) ("Since this is a case of first impression, we look to jurisdictions with similar provisions...."). The Business Corporation Act, NMSA 1978, §§ 53–11–1 to –18–12 (1967, as amended through 2003), was adopted from the Model Business Corpora-

tion Act, and many other states have similar provisions. *Smith,* 114 N.M. at 342, 838 P.2d at 496 (describing the pedigree of the New Mexico Business Corporation Act as adopted from the Model Act).

{21} Plaintiff admits that most appraisal statutes are exclusive remedies for a claim by a dissenting shareholder in the absence of fraud or illegality. However, he argues that there is disagreement and ambiguity regarding the extent to which a claim for breach of fiduciary duty is included in the fraud or illegality exception to exclusivity. We agree that breach of fiduciary duty may sometimes rise to the level of fraud or illegality, but we decline to extend the statutory exception to all claims of breach of fiduciary duty. Other jurisdictions hold similarly. *E.g., Rosenstein v. CMC Real Estate Corp.,* 168 Ill.App.3d 92, 118 Ill.Dec. 766, 522 N.E.2d 221, 223, 226 (1988) (holding that Wisconsin's appraisal remedy excluded the plaintiff's claim for breach of fiduciary duty based on an improper purpose for the merger and an undervaluation of the shares because that claim did not fit within the statutory exception for fraud or illegal conduct); *Osher v. Ridinger,* 162 N.C.App. 155, 589 S.E.2d 905, 907–08 (N.C.Ct.App.2004) (holding that North Carolina's appraisal remedy excluded plaintiff's claim for breach of fiduciary duty because that claim was "essentially about the price received in a merger" and therefore no fraud or unlawful action had been alleged); *Am. Network Group, Inc. v. Kostyk,* 834 S.W.2d 296, 298–99 (Tenn.Ct.App.1991) (holding that Tennessee's appraisal remedy does not exclude all claims for breach of fiduciary duty, but that the plaintiff's claim was excluded because he had an appraisal right and sought compensation only for loss of economic advantage). *But see, e.g., Krieger v. Gast,* 122 F.Supp.2d 836, 846 (W.D.Mich.2000) (characterizing breach of fiduciary duty as "other unlawful action").

{22} We need not attempt to catalog all the types of conduct that might fall within the statutory exception for fraud or unlawful conduct. However, for future litigants, we suggest that the Delaware Supreme Court's list in *Weinberger* might be helpful in defin-

ing the types of claims that are not adequately remedied by the statutory appraisal proceeding: "fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983).

{23} Plaintiff argues that two of MBF's key authorities are distinguishable. Specifically, he argues that *Szaloczi v. John R. Behrmann Revocable Trust*, 90 P.3d 835 (Colo.2004) (en banc), and *Steinberg v. Amplica, Inc.*, 42 Cal.3d 1198, 233 Cal.Rptr. 249, 729 P.2d 683 (1986) (en banc), should not inform our decision. We agree that these cases are not directly on point but nonetheless find their reasoning persuasive.

{24} We turn first to *Szaloczi* in which the minority shareholder alleged that, in connection with the sale of the assets of a closely held corporation, the officers withheld information, granted themselves advantageous stock options, negotiated personal employment contracts, and arranged to take improper amounts from the sale of assets, thus adversely affecting the value of the dissenter's shares in the corporation. *Szaloczi*, 90 P.3d at 837–38. The Colorado Supreme Court held that the action for compensatory damages was properly dismissed because the minority shareholder was bound by the exclusivity provision found in the appraisal statute. *Id.* at 838.

{25} Plaintiff argues that this Court should not consider *Szaloczi* as persuasive authority because the Colorado statute at issue in that case required that all shareholders be provided with notice of the right to dissent, the right to demand payment, and the deadline for filing the requisite appraisal demand. *See id.* at 839. We consider this distinction to be without import because, in this case, Plaintiff makes no claim as to lack of notice of his appraisal rights. To the contrary, evidence shows that Plaintiff had ample notice regarding his rights to dissent and appraisal. Before the merger, MBF's counsel advised Trustee's counsel that it considered Section 53–14–1 to be the statutory authority for the merger. Plaintiff acknowledges that neither he nor Trustee made a written demand "for payment of the fair value" as required by Section 53–15–4(A) "because the Trust elected not to go under the appraisal remedy," not because they were unaware of the remedy. *See Steinberg*, 233 Cal.Rptr. 249, 729 P.2d at 689 (noting that the plaintiff admitted having "discussed his right to appraisal with his attorney before the merger [and having] decided not to seek that remedy").

{26} Plaintiff additionally seeks to distinguish *Szaloczi* because the Colorado Court limited the dissenting shareholder to the statutory appraisal remedy to avoid duplicate recovery. *Szaloczi*, 90 P.3d at 841. The Colorado court's recognition that any recovery on a claim for breach of fiduciary duty would duplicate the recovery available under the appraisal remedy supports MBF's contention that the recovery sought by Plaintiff in his claim for breach of fiduciary duty could have been considered, and possibly awarded, in an appraisal proceeding. *See Steinberg*, 233 Cal.Rptr. 249, 729 P.2d at 690 (observing that the appraisal statute does not "prevent vindication of a shareholder's claim of misconduct in an appraisal proceeding"). Moreover, *Szaloczi* interpreted the Colorado statute's exceptions for fraud or illegality very narrowly and excluded all but equitable proceedings. *Szaloczi*, 90 P.3d at 840.

{27} Plaintiff seeks to distinguish *Steinberg* based on differences in the underlying facts and the applicable law. Again, we are unpersuaded. In *Steinberg*, the minority shareholder alleged fraud and breach of fiduciary duty, as well as an unlawful merger, based on misrepresentations made by corporate officers. *Id.* at 686. The Supreme Court of California held that the action was barred by California's appraisal remedy because the plaintiff knew all of the relevant facts prior to the merger but "deliberately opted to sue for damages instead of seeking appraisal." *Id.* at 694. For his factual argument, Plaintiff notes that *Steinberg* involved an offering price that exceeded the price the plaintiff paid for his stock. *Id.* at 686. However, the evidence in this case also shows that, in light of the lack of any cash contribution made by Plaintiff, MBF offered to purchase Plaintiff's stock for much more than he paid.

{28} We also disagree that the differences in the law render *Steinberg* irrelevant. First, for the same reasons discussed above as to *Szaloczi*, we disagree that *Steinberg* is unreliable authority merely because the statute in that case required specific notice that is not required in this case. Second, we recognize that the court in *Steinberg* limited its holding to mergers of two separate corporations, not under common control or controlled by each other. *Steinberg*, 233 Cal. Rptr. 249, 729 P.2d at 685 n. 3, 694. Despite these differences, the California court's interpretation of the general exclusivity provision set forth in Cal. Corp.Code § 1312(a) (1990), *see Steinberg*, 233 Cal.Rptr. 249, 729 P.2d at 689–94, is relevant authority on the issue of determining whether New Mexico's similarly-worded appraisal remedy is exclusive, even though the New Mexico legislature has chosen not to enact the more specific provisions contained in the California Code.

## ABSENCE OF FRAUD OR UNLAWFUL CONDUCT

■ {29} We next consider whether Plaintiff's claims fall within the exception to exclusivity for fraud or unlawful conduct. Ordinarily, a plaintiff's claims may be examined at the pleading stage, and a court may determine that the plaintiff has failed to plead a legally cognizable claim for fraud or unlawful conduct so as to escape the exclusive remedy of appraisal. *See, e.g., Weinberger*, 457 A.2d at 703 (affirming lower court's ruling that "[a] plaintiff in a suit challenging a cash-out merger must allege specific acts of fraud, misrepresentation, or other items of misconduct to demonstrate the unfairness of the merger terms to the minority"); *Werner v. Alexander*, 130 N.C.App. 435, 502 S.E.2d 897, 901–02 (1998) (affirming dismissal of minority shareholders' complaint because the complaint did not allege "circumstances constituting unlawful or fraudulent conduct," so that exclusive remedy for minority shareholders' claims about undervalued shares in a cash-out merger was the appraisal statute); *Walk v. Balt. & Ohio R.R.*, 847 F.2d 1100, 1107–08 (4th Cir.1988) (noting that, under Maryland law, allegations of fraud in the context of corporate mergers should be carefully scrutinized to determine whether the plaintiff was complaining only

about the valuation of minority shares, in which case the plaintiff's claim would be a matter that could be resolved in a statutory appraisal proceeding), *vacated on other grounds*, 492 U.S. 914, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1989). However, in this case, the trial court denied Defendant's motion to dismiss and the matter went to trial. We therefore review the evidence to determine whether Plaintiff proved fraud or unlawful conduct.

■ {30} Plaintiff has not established any fraud or illegality in the form of dishonesty or . misrepresentation on the part of Sturges and Daniels while acting on behalf of the corporation that would allow Plaintiff to assert his claim outside of the appraisal remedy. The record establishes that Trustee received all of MBF's financial statements. Furthermore, although Plaintiff contends that valuations were not disclosed to Trustee, the record shows that these calculations were disclosed to Plaintiff at the time. In fact, the memoranda at issue are directed to Plaintiff.

■ {31} Likewise, no fraud or illegal conduct was established based upon the shareholders' individual financial statements prepared by Sturges and Daniels in 1998 through 2000 showing their respective one-third corporate interests at $700,000. Before trial, the trial court held that any alleged failure to disclose personal financial statements to the other shareholders would not support a claim of failure to disclose because there was no authority requiring shareholders in a closely held corporation to exchange personal financial statements. Plaintiff cites no authority to contradict the trial court's finding on this issue. Furthermore, Plaintiff admitted that he was aware of these figures and that he reported the same amounts on his own financial statements.

■ {32} Plaintiff further argues that the majority shareholders acted fraudulently or unlawfully by using the voting mechanism to cash out Plaintiff for no reason other than to eliminate him. When there is disagreement in the corporate decision-making process, the majority may vote to eliminate the minority shareholders by implementing a cash-out or "freeze-out" merger. *Stringer*,

841 P.2d at 1184. In a "freeze-out" merger, like the one in this case, the minority ownership is forced to give up its shares in the corporation in exchange for cash while the controlling interest is allowed to retain its equity. *Sifferle v. Micom Corp.*, 384 N.W.2d 503, 506 n. 1 (Minn.Ct.App.1986). Even if the majority sought to freeze out Plaintiff for no legitimate reason, claims that the majority instituted the merger only to freeze out the minority do not state a claim for fraud or illegal conduct that is recognized outside of the appraisal remedy. *See, e.g., Rosenstein,* 118 Ill.Dec. 766, 522 N.E.2d at 224 (noting that "even if the sole purpose of a merger is to eliminate minority shareholders, this does *not make the merger itself improper*"); *Fleming v. Int'l Pizza Supply Corp.*, 676 N.E.2d 1051, 1056–57 (Ind.1997) (holding that the legislature did not intend to permit judicial inquiry into the purpose, or lack of purpose, for the merger, but that a shareholder who believes he was treated unfairly can litigate the breach of fiduciary duty claim in the appraisal proceeding).

{33} Because Plaintiff failed to show any fraud or illegal activity, his citation to *Turner v. Bernstein,* 776 A.2d 530 (Del.Ch.2000), for the proposition that appraisal is not the exclusive remedy for "defrauded shareholders" is irrelevant. *See id.* at 531–32 (granting partial summary judgment in favor of the dissenting shareholders on their claim for breach of fiduciary duty against the directors, not the corporation, because the directors had deprived the shareholders of information that was necessary to make an informed decision as to whether to accept the price offered in the merger or whether to seek an appraisal).

## CONCLUSION

{34} We conclude that this is a case, at its core, about a freeze out of the minority shareholder and the fairness of the price per share paid to him. These are matters for an appraisal proceeding, and Plaintiff has not proved any fraudulent or unlawful conduct. Therefore, Plaintiff had no ability to sue outside of the statutory appraisal process.

{35} Moreover, in this case, we are only considering whether the appraisal remedy is the exclusive remedy in a suit against the corporation for breach of fiduciary duty. Because the trial court dismissed Defendants Sturges and Daniels, we need not decide whether and under what circumstances a dissenting shareholder may have a common law claim against the majority shareholders or the officers and directors.

{36} We reverse the judgment in favor of Plaintiff because he failed to avail himself of his exclusive appraisal remedy pursuant to Sections 53–15–3 and 53–15–4. Because Plaintiff failed to take advantage of his statutory right to appraisal, he took the risk of being held to the amount offered in the merger and is now bound by the terms of the corporate action. *See* §§ 53–15–3(D), –4(A). In light of our decision to reverse the judgment, we do not reach the issues raised by Plaintiff in his appeal. *See Srader v. Verant,* 1998–NMSC–025, ¶ 40, 125 N.M. 521, 964 P.2d 82 (noting that reviewing court will not determine academic or moot questions); *State ex rel. Battershell v. City of Albuquerque,* 108 N.M. 658, 664, 777 P.2d 386, 392 (Ct.App.1989) (declining to address issues raised on appeal that are not necessary to disposition of the case).

{37} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CYNTHIA A. FRY, Judges.