911 A.2d 1164 (2006)
Stephen M. BERGER, Plaintiff,
v.
INTELIDENT SOLUTIONS, INC., and Diasti Family Limited Partnership, Defendants.
C.A. No. 1527-N.
Court of Chancery of Delaware, New Castle County.
Submitted: September 6, 2006.
Decided: October 12, 2006.
*1166 Ronald A. Brown, Jr., Prickett, Jones & Elliott, P.A., Wilmington, DE, for the Plaintiff.
Michael R. Laskowski, Matt Neiderman, Duane Morris, LLP, Wilmington, DE; Stewart D. Aaron, Veronica E. Rendon, J. Alex Brophy, Arnold & Porter, LLP, New York City, for the Defendants.

OPINION
LAMB, Vice Chancellor.
A former minority stockholder in a Florida corporation brings this suit for breach of fiduciary duty in connection with a freeze-out merger accomplished under Florida law. The corporate defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted, arguing, inter alia, that an action for appraisal is the stockholder's only remedy under Florida statutory law. The defendants further contend that the four-business-day notice of the merger given to the minority satisfied Florida's statutory minimum requirement and, thus, was adequate notice as a matter of law. Reviewing the well pleaded allegations of fact most favorably to the plaintiff and drawing all reasonable inferences in the plaintiff's favor, the court finds that the complaint adequately alleges that the defendants violated their duty of disclosure despite technical compliance with the statutory notice period. For this reason, the motion to dismiss will be denied.

I.[1]
A. The Parties
Defendant Coast Dental Services, Inc., a Florida corporation, provides dental *1167 management services to a consortium of 106 dental centers in Florida, Georgia, Virginia, and Tennessee. In April 2004, Coast Dental deregistered and became a private company. Thereafter, Coast Dental's stock traded intermittently on the pink sheets.
Before the challenged transaction, defendant Diasti Family Limited Partnership ("DFLP"), a Nevada limited partnership, owned approximately 67% of Coast Dental's outstanding common stock. Terek Diasti, Coast Dental's chairman, Adam Diasti, Coast Dental's president and director, and Tim Diasti, Coast Dental's director, controlled DFLP.
Defendant Intelident Solutions, Inc., a Delaware corporation, was formed by DFLP on May 11, 2005 to effectuate the merger. To consummate the transaction, Intelident formed a wholly owned Florida corporation called Intelident Merger Corporation to function as the acquisition vehicle to merge into Coast Dental. Because Coast Dental survived the transaction, Intelident Solutions emerged as the 100% owner of Coast Dental. Though DFLP remains the majority stockholder of Intelident, thirteen members of Coast Dental's management obtained minority ownership positions as a result of the transaction.
Stephen M. Berger, the plaintiff, is a former minority stockholder of Coast Dental. Berger was cashed out as a result of the merger and seeks relief on his own behalf and purportedly on behalf of all former minority stockholders of Coast Dental.
B. The Freeze-Out Merger
In April 2005, DFLP, along with certain members of Coast Dental's management, proposed to cash out the company's minority stockholders for $6 per share. Coast Dental formed a special committee composed of two purportedly independent directors, Peter M. Sontag and Richard T. Welch, to analyze the proposal. The committee retained legal counsel and hired Capitalink L.C. to serve as its financial advisor. Capitalink's preliminary analysis determined that $6 per share was an unfair price. Following bargaining with the committee, DFLP increased its bid to $9.25 per share. Capitalink issued a fairness opinion at this price. The committee and the board of directors then approved the merger.
The company scheduled the stockholders' vote for July 11, 2005. Neither the company, the board, nor DFLP informed the minority stockholders about the pendency of the transaction until mailing the proxy statement on July 1, 2005. Because July 1 fell on a Friday and because Monday, July 4, was a national holiday, the minority stockholders had a four-business-day window during which to receive and analyze the proxy material and potentially notify Coast Dental of a decision to seek appraisal.[2] Allegedly, the committee members approved the timing of the proxy statement because they were offered the chance to continue as directors of the surviving company. Although it was disseminated on a breakneck schedule, the proxy statement did contain a ten-page summary of Capitalink's valuation analysis. The proxy materials also offered to make management projections available to stockholders *1168 upon request. On July 11, DFLP voted its shares in favor of the merger. As a result, the minority stockholders were cashed out at $9.25 per share. No minority stockholders sought appraisal or voted on the transaction.[3]

II.
The plaintiff filed this individual and purported class action on July 29, 2005 against DFLP and Intelident Solutions. The complaint alleges that DFLP breached its fiduciary duties in connection with the freeze-out merger and requests relief in the form of "the difference between $9.25 per share and the `fair value' of Coast Dental [shares]."[4] Essentially, the complaint boils down to two issues. First, the plaintiff claims that DFLP unfairly timed the merger in order to "keep minority shareholders in the dark as long as possible and to prevent anyone else from having time to make a better offer."[5] This unfair dealing purportedly led to a cash-out price that was approximately half of Coast Dental's book value. Second, the complaint claims that the proxy statement omitted and misstated material facts about the transaction. On this point, the plaintiff challenges the extent to which management projections and the methodology of Capitalink's valuation analysis were disclosed.
The defendants originally moved to dismiss the complaint on September 22, 2005. This court granted the defendants' motion on the grounds of forum non conveniens without reaching the issue of whether the complaint stated a claim upon which relief could be granted.[6] The Delaware Supreme Court reversed and remanded.[7] On June 15, 2006, the defendants renewed their motion to dismiss, again asserting that the complaint fails to state a cognizable claim. The defendants argue that because the company and DFLP complied with Florida's ten day statutory notice provision when mailing the proxy materials, the plaintiff's claim of unfair dealing fails as a matter of law.[8] Additionally, the defendants argue that because the plaintiff seeks monetary damages, Florida's appraisal exclusivity statute forecloses his claim.[9] In advancing this point, the defendants posit that a Florida court would follow New York law to interpret the appraisal statute,[10] and since New York law allows only equitable relief if appraisal is otherwise available, the plaintiff's present claim is inappropriate. Finally, the defendants argue that the alleged non-disclosures were not material and did not alter the total mix of information available to Coast Dental's minority stockholders.[11] Both parties submitted briefs on this motion, and the court heard oral argument on September 6, 2006.

III.
A court will dismiss a complaint under Court of Chancery Rule 12(b)(6) only if it determines "with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled *1169 to relief."[12] The veracity of all well pleaded facts is assumed, as are all reasonable inferences which may be drawn from those facts.[13] However, a court should not "blindly accept as true all allegations, nor must it draw all inferences from them in the plaintiff's favor unless they are reasonable inferences."[14] Mere conclusions of law or fact are insufficient.[15] Specific factual allegations must exist which logically tend to support the plaintiff's conclusions.[16]

IV.
A. The Applicable Statutes
This case involves the application of two Florida corporate statutes. The first, section 607.0705(1), requires that notice of a stockholders' meeting be mailed no more than sixty days and no less than ten days before the date of the meeting.[17] There is no dispute that the defendants technically complied with section 607.0705(1).
The second provision is Florida's appraisal exclusivity statute. Section 607.1302(4) provides:
A shareholder entitled to appraisal rights under this chapter may not challenge a completed corporate action for which appraisal rights are available unless such corporate action (a) was not effectuated in accordance with the applicable provisions of this section or the corporation's articles of incorporation, bylaws, or board of directors' resolution authorizing the corporate action; or (b) was procured as a result of fraud or material misrepresentation.[18]
It is this section of Florida law which the court must now interpret.[19]
Under the internal affairs doctrine, as applied by Delaware courts, Florida law governs the substantive issues for decision.[20] But given the complete absence of Florida case law interpreting section 607.1302(4), this court must predict how a Florida tribunal would construe that provision. Florida courts often find Delaware law highly persuasive when confronting complex issues in the corporate arena.[21] Moreover, when interpreting statutes, a Florida court will examine decisions from *1170 states whose provisions resemble those of Florida.[22]
The defendants correctly observe that Delaware law regarding the exclusivity of appraisal is judge-made, not statutory.[23] The absence of such a statutory provision does not, however, necessarily constrain this court's understanding of the analytical framework a Florida court would adopt. Other courts, when faced with similar circumstances, have observed as much.[24]
The defendants argue that the settled law of New York with regard to appraisal exclusivity ought to foreclose the plaintiff's present claim. While New York's jurisprudence is relevant to defining the parameters of the appraisal exclusivity provision of the Revised Model Business Corporation Act ("RMBCA"),[25] this court believes that a Florida court would follow the approach adopted by several other jurisdictions whose statutes mirror section 607.1302(4).[26] Rather than solely relying upon New York law, these jurisdictions have considered well established Delaware precedent when interpreting their appraisal statutes.[27]
B. The Appropriate Interpretive Framework
Section 13.02(d) of the RMBCA, upon which section 607.1302(4) is fashioned, embraces principles of Delaware common law regarding appraisal exclusivity.[28] Indeed, section 13.02(d) has been read as incorporating the teaching of Weinberger v. UOP, Inc.[29] and its progeny.[30]
In Weinberger, the court explained that an appropriate examination of the "entire fairness" of a freeze-out transaction entails a two-part inquiry: fair price and fair dealing.[31] The fair price prong focuses upon issues involving the adequacy of consideration offered to the minority stockholders by the controlling interest.[32] Disputes that essentially challenge fair price, centering as they do upon matters of valuation, should typically be confined to *1171 appraisal proceedings.[33] Thus, where valuation issues objectively predominate in an entire fairness claim, appraisal is the minority stockholder's exclusive legal remedy under Delaware law.[34]
But, as Rabkin v. Philip A. Hunt Chemical Corp.[35] later made clear, appraisal is not an exclusive remedy when a minority stockholder's suit contains factually supported allegations of unfair dealing.[36] The fair dealing prong of entire fairness examines the transaction for procedural equity and involves "questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained."[37] Indeed, where "fraud, misrepresentation, . . . or gross and palpable overreaching are involved," the appraisal remedy alone will prove inadequate.[38]
As Rabkin noted, reviewing courts face the difficult duty of spotting a fair price complaint artfully disguised in the camouflage of procedural unfairness.[39] For while "mere allegations of `unfair dealing,' without more, cannot survive a motion to dismiss, averments containing `specific acts of fraud, misrepresentation, or other items of misconduct' must be carefully examined. . . ."[40] This exercise of judicial review is necessary to strike a balance between "sustaining complaints averring faithless acts . . . and properly dismissing those allegations questioning judgmental factors of valuation."[41]
Notably, other jurisdictions which have enacted provisions similar to section 607.1302(4) rely upon the fair price/fair procedure distinction in Weinberger. Specifically, the framework detailed above has guided judicial determinations as to whether the "fraud or material misrepresentation" exception contained in section 607.1302(4)(b) ought to apply to a particular claim. For example, in McMinn v. MBF Operating, Inc.,[42] the court quoted relevant language from Weinberger which, in its judgment, was "helpful in defining the types of claims that are not adequately remedied by the statutory appraisal proceeding."[43] Other courts have engaged in a similar analysis.[44] It is likely that a Florida court would follow the lead of these other states and employ a Weinberger type test to decide if appraisal is the sole remedy for the plaintiff here.
The New York test advocated by the defendants to determine whether appraisal *1172 is the exclusive remedy places dispositive weight not on the factual allegations of fiduciary misconduct, but solely upon the remedy sought.[45] For example, in Szaloczi v. John R. Behrmann Revocable Trust, the Supreme Court of Colorado did not disturb the lower court's holding that the complaint at issue alleged constructive fraud. But, in dismissing that complaint, the court followed New York precedent in ruling that it was "not enough to plead a cause of action over which equity has jurisdiction; the dissenting shareholder must request equitable relief."[46] Therefore, under the New York approach, if the primary relief sought is monetary, appraisal is said to be the exclusive remedy.[47] And while this method has its practical advantages,[48] its rigid application to complaints such as the one here would require the premature and inequitable dismissal of an action legitimately challenging unfair dealing.
Here, the plaintiff contends that the defendants consciously used their majority position to ensure the minority stockholders had neither the time nor the opportunity to exercise their statutory appraisal rights. The complaint alleges that the inequitable timing chosen by the defendants prevented the exercise of the very remedy they now argue was the plaintiff's exclusive relief. But because the plaintiff seeks a monetary remedy rather than an equitable one,[49] the New York framework would require dismissal of the plaintiff's case.[50] That result is unwarranted given the present facts.
Even if a Florida court chose to follow the New York formula in interpreting section 607.1302(4), the present action is factually distinguishable from the cases on which the defendants rely. For instance, in one recent case, the plaintiffs attempted to supplement their appraisal recovery with compensatory damages in a separate suit alleging fraud and breach of fiduciary duty. Thus, the plaintiffs there were trying to relitigate their judicially determined appraisal valuation.[51] This possibility does not exist here since no appraisal action has been brought. More importantly, in the cases applying the New York formula, the fraudulent or inequitable acts attributed to those defendants did not foreclose those plaintiffs' ability to dissent and initiate an appraisal proceeding.[52] Here, the defendants' *1173 volitional conduct is alleged to have done just that.
While the remedy sought is likely a relevant factor in determining whether a complaint truly takes issue with price or procedure in a given transaction, the charge of Weinberger is to make a careful examination of the complaint in its entirety. As discussed below, that review yields the unavoidable conclusion that the plaintiff's primary allegations adequately allege unfair dealing.
C. The Plaintiff Alleges Facts Which, If Proven, Constitute "Fraud Or Material Misrepresentation" Under Section 607.1302(4)(b)
Under Delaware law, when cashing out the minority stockholders in a merger, a majority stockholder has certain obligations, including a duty of disclosure. A majority stockholder must "disclose with entire candor all material facts concerning the merger, so that the minority stockholders [will] be able to make an informed decision as to whether to accept the merger price or to seek judicial remedies such as appraisal, an injunction, or a post-merger damage action."[53] Because the minority must relinquish its stock in a cash-out transaction, stringent "[a]pplication of the required disclosure standards is deemed even more compelling."[54] Indeed, duty of candor claims are highly contextual and are "rarely an appropriate issue for resolution on a motion to dismiss."[55]
The defendants argue that because they mailed the notice of meeting and proxy statement within the minimum period for giving notice of all stockholder meetings prescribed by the Florida statute, the complaint fails to state a claim for a disclosure violation based on the brevity of the notice actually given. Compliance with the minimum statutory notice period, they say, is a legally determinative discharge of a controlling stockholder's duty of disclosure. The defendants advance this argument even though the complaint alleges that the plaintiff had neither sufficient time to evaluate the proxy materials nor a reasonable opportunity to seek appraisal.[56]
This argument fails for several reasons. First, the statutory obligation to give notice and judicially imposed fiduciary duty of disclosure are not identical.[57] *1174 Instead, the fiduciary duty of disclosure "applies as a corollary to the statutory requirements."[58] Under normal circumstances, compliance with a statutory notice provision is sufficient to satisfy the temporal element of the judicially imposed duty.[59] But this is not necessarily true in a case in which the circumstances strongly suggest that the notice period was grossly inadequate.
Here, the corporation mailed the notice of meeting and proxy statement exactly within the minimum ten calendar day period prescribed by statute. But if, as is alleged, the defendants chose the absolute minimum notice period available aware that it would not only prevent the minority stockholders from fully and fairly examining the proxy materials but also prevent them from exercising their appraisal rights, this court cannot say that a breach of the disclosure obligation did not occur.
The notion that "an otherwise candid proxy statement may be so untimely as to defeat its purpose of meeting the needs of a fully informed electorate" is elemental to the robust functioning of corporate democracy.[60] This axiom is especially applicable where the timing challenge pertains to initial, rather than supplemental, proxy materials of an unregistered company.[61] Clearly, "the facts alleged import a form of overreaching, and . . . deserve more considered analysis than can be accorded to them on a motion to dismiss."[62] And as the plaintiff's complaint states a claim of procedural unfairness that "goes beyond issues of `mere inadequacy of price,'" dismissal on this point is improper.[63]
Second, the defendants' alleged conduct contravenes an important axiom of equity jurisprudence. As was dutifully observed in Schnell v. Chris-Craft Industries: "inequitable action does not become permissible simply because it is legally possible."[64] Proper invocation of the Schnell doctrine is highly contextual and "should be reserved for those instances that threaten the fabric of the law, or which by an improper manipulation of the law, would deprive a person of a clear right."[65]
On the alleged facts, this case would appear to involve the kind of inequitable conduct that Schnell meant to thwart: the intentional deprivation of a clear statutory right to seek appraisal. The complaint avers that the defendants, as controlling stockholders of a thinly traded, unregistered corporation, consciously decided to send notice of a cash-out merger in the most abbreviated period allowed by statute  encompassing a national holiday and two weekends. Although the terms of the merger purportedly took months to structure *1175 and negotiate, the defendants apparently expected the plaintiff (and other minority stockholders) to receive notice of the transaction, to absorb and meaningfully analyze the proxy materials, to decide whether to seek appraisal, and to notify the company as to his (and their) decision in four business days.[66] Such extravagant expectations raise serious factual issues as to whether the timing of the transaction afforded the plaintiff a realistic opportunity to exercise his statutory appraisal remedy. In this regard, it is interesting to note the concession made at oral argument in response to the court's questioning: no minority stockholders voted on the transaction and none sought appraisal. These additional facts, when viewed in the light most favorable to the plaintiff, further support the inference that the timing of the transaction was unreasonably manipulated.[67]
Statutory notice is but one facet of the "myriad of ministerial functions" which a majority stockholder, by virtue of its control over the board of directors, might manipulate to obtain an inequitable advantage over the minority.[68] And while the actual consummation of this merger may have been a foregone conclusion, this court is mindful that "in any voting context, actions taken for the purpose of interfering with a full and fair exercise of the stockholder franchise will run afoul" of basic equitable principles.[69] Given the Florida courts' observance of well established Delaware corporate doctrines, this court has no reason to think a Florida court would hold otherwise.[70]
This court concludes that, under Florida law, the plaintiff alleges sufficient indicia of procedural unfairness to satisfy the "fraud or material misrepresentation" exception provided in section 607.1302(4)(b). Where a controlling stockholder purposefully manipulates the timing of the proxy process in a cash-out merger so as to preclude a minority stockholder from enjoying any realistic opportunity to exercise his statutory appraisal rights, a breach of the duty of disclosure occurs. Such a breach, as it plainly implicates the procedural fairness of a transaction, is *1176 properly addressed in an action outside an appraisal proceeding.

V.
For the foregoing reasons, the defendants' motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6) is DENIED. IT IS SO ORDERED.
NOTES
[1] The well pleaded allegations in the complaint provide the facts referenced in this opinion. On a motion to dismiss, the court generally considers only those facts referred to in the complaint. However, the court will also consider uncontested factual admissions of the parties contained in the record. Bergstein v. Texas Int'l Co., 453 A.2d 467, 469 (Del.Ch.1982); see Reeder v. Delaware Dept. Of Ins., 2006 WL 510067, at *7 (Del.Ch. Feb.24, 2006) (relying on briefs and oral argument on motion to dismiss).
[2] Oral Argument Tr. 19-20, Sept. 6, 2006.
[3] Id. at 17-18.
[4] Compl. ¶¶ 18-20.
[5] Id. at ¶ 13.
[6] Berger v. Intelident Solutions, Inc., 2005 WL 3294682 (Del.Ch. Nov. 30, 2005).
[7] Berger v. Intelident Solutions, Inc., 906 A.2d 134, 2006 WL 1132079 (Del. 2006).
[8] Defs.' Reply Br. 1-2; see also Fla. Stat. § 607.0705(1) (2006).
[9] Defs.' Reply Br. 2.
[10] Id. at 6-13.
[11] Id. at 2.
[12] Grobow v. Perot, 539 A.2d 180, 187 n. 6 (Del. 1988).
[13] Kohls v. Kenetech Corp., 791 A.2d 763, 767 (Del.Ch. 2000).
[14] Grobow, 539 A.2d at 187 n. 6.
[15] Bergstein, 453 A.2d at 469.
[16] Id.
[17] Fla. Stat. § 607.0705(1) (2006). For any "applicable statute," Florida's civil procedure rules state that if a time period is less than seven days, then Saturdays, Sundays, and holidays are excluded from that period. Fla. R. Civ. P. 1.090(a) (2006).
[18] Fla. Stat. § 607.1302(4) (2006).
[19] The plaintiff also argues that he does not challenge a "completed corporate action" within the meaning of section 607.1302(4) and reasons that a difference exists "between seeking a remedy against a controlling stockholder because of misconduct in connection with a corporate action and challenging the corporate action itself." Pl.'s Answering Br. 10. This casuistic interpretation of section 607.1302(4), if adopted by the court, would certainly create an expansive hole in the exclusivity of appraisal as a stockholder's sole remedy. Fortunately, common sense requires a different reading of the nature of this action  as one obviously attacking a completed corporate action. Indeed, the complaint admits as much. See Compl. ¶ 4 (referring to the "freeze-out transaction challenged herein").
[20] VantagePoint Venture Partners 1996 v. Examen, Inc., 871 A.2d 1108, 1112 (Del. 2005).
[21] Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1459 n. 22 (11th Cir. 1989); Boettcher v. IMC Mortgage Co., 871 So.2d 1047, 1052 n. 5 (Fla.App. 2004); Connolly v. Agostino's Ristorante, Inc., 775 So.2d 387, 388 n. 1 (Fla.App. 2000). See also Klein v. FPL Group, Inc., 2004 WL 302292, at *18 (S.D.Fla. Feb. 5, 2004) (listing Florida cases which examine Delaware decisions).
[22] See Greco v. Tampa Wholesale Co., 417 So.2d 994, 996 n. 2 (Fla.2d Dist. 1982) (following New York law rather than Delaware law due to statutory similarity).
[23] See Andra v. Blount, 772 A.2d 183, 195 n. 30 (Del.Ch. 2000) (noting the nonexclusive nature of 8 Del. C. § 262).
[24] See Klein, 2004 WL 302292, at *17 n. 33 (quoting the magistrate's order below which noted the lack of a Delaware statute but which still reasoned that "Delaware law provides a framework for analysis").
[25] See note 28 infra.
[26] See note 44 infra.
[27] Florida courts have relied upon Weinberger v. UOP, Inc., 457 A.2d 701 (Del.1983) on prior occasions to interpret statutory language in the area of appraisal. In one recent decision, a court used Weinberger, as well as other Delaware cases, to interpret the meaning of "fair value" as used in section 607.1301(2). Boettcher, 871 So.2d at 1052 n. 5, 1054 n. 6.
[28] The version of section 13.02(d) which Florida has enacted, while "more sharply focused than its predecessor in the 1984 Act," 3 Model Bus. Corp. Act Ann., § 13.02, cmt. on Historical Background at 13-29 (3d ed. 2002), is undoubtedly still "designed to recognize and preserve the principles . . . in the case law of Delaware, New York, and other states with regard to the effect of dissenters' rights on other remedies of dissident shareholders." Model Bus. Corp. Act § 13.02 cmt. 2 (1984).
[29] 457 A.2d 701.
[30] See, e.g., Sieg Co. v. Kelly, 568 N.W.2d 794, 802 (Iowa 1997) (noting the reconcilability of Weinberger and RMBCA § 13.02(d)); Peter V. Letsou, The Role of Appraisal in Corporate Law, 39 B.C.L. Rev. 1121, 1154-55 (1998) (noting same).
[31] Weinberger, 457 A.2d at 711.
[32] Id.
[33] Id.
[34] See id. at 714 (holding that "a plaintiff's monetary remedy should ordinarily be confined to the more liberalized appraisal proceeding herein established").
[35] 498 A.2d 1099 (Del.1985).
[36] Id. at 1105.
[37] Id. at 1104, quoting Weinberger, 457 A.2d at 711.
[38] Id., quoting Weinberger, 457 A.2d at 714.
[39] Id. at 1107.
[40] Id. at 1105, quoting Weinberger, 457 A.2d at 703, 711, 714.
[41] Id. at 1107-08.
[42] 139 N.M. 419, 133 P.3d 875 (Ct.App.2006), cert. granted, 139 N.M. 429, 134 P.3d 120 (2006).
[43] Id. at 881-82.
[44] See, e.g., Bingham Consol. Co. v. Groesbeck, 105 P.3d 365, 373 (Utah Ct.App.2004) (citing Weinberger and noting unfair dealing claims appropriately considered outside of appraisal); Sieg, 568 N.W.2d at 802 (citing Weinberger and interpreting exclusivity statute accordingly). Compare Fla. Stat. § 607.1302(4) (2006) with Utah Code § 16-10a-1302(5) (2006) and Iowa Code § 490.1302(4) (2006).
[45] See Szaloczi v. John R. Behrmann Revocable Trust, 90 P.3d 835, 842 n. 9 (Colo.2004) (discussing the New York test).
[46] Id. (citing Walter J. Schloss Assocs. v. Arkwin Indus., 90 A.D.2d 149, 455 N.Y.S.2d 844, 850 (N.Y.App.Div.1982) (Magano, J., dissenting)).
[47] Walter J. Schloss Assocs., 455 N.Y.S.2d at 850.
[48] For instance, a prayer for relief seeking compensatory damages or "fair value" is hard to conceal, even if a plaintiff recasts the remedy as rescissionary damages or equitable accounting.
[49] If the facts are as the plaintiff claims, the defendants' conduct thwarted an action for appropriate equitable relief as well. One cannot seek an injunction to prevent or delay a stockholder vote if one cannot learn that a vote is scheduled.
[50] See Walter J. Schloss Assocs. v. Arkwin Indus., 61 N.Y.2d 700, 472 N.Y.S.2d 605, 460 N.E.2d 1090, 1091 (1984) (adopting the dissenting opinion of Mangano, J. at the Appellate Division as Court of Appeals opinion), rev'g 90 A.D.2d 149, 455 N.Y.S.2d 844 (1982); see also Szaloczi, 90 P.3d at 842 n. 9.
[51] See Szaloczi, 90 P.3d at 842 (Colo.2004) (applying New York law and noting that a "dissenting shareholder may not seek compensatory damages in addition to the appraisal remedy").
[52] See, e.g., Walter J. Schloss Assocs., 455 N.Y.S.2d at 845-46 (discussing sufficiency of notice in the factual background of the proceeding); Burke v. Jacoby, 981 F.2d 1372, 1375 (2d Cir. 1992) (noting the plaintiff's timely approval of the later challenged transaction); Szaloczi, 90 P.3d at 837-38 (where notice was clearly not implicated since appraisal was timely sought).
[53] Ince & Co. v. Silgan Corp., 1991 WL 17171, at *5 (Del.Ch. Feb. 7, 1991) (quoting Sealy Mattress Co. v. Sealy, Inc., 532 A.2d 1324, 1335 (Del.Ch. 1987)).
[54] Id.
[55] Id. (quoting Porter v. Texas Commerce Bancshares, Inc., 1989 WL 120358, at *6 (Del. Ch. Oct. 12, 1989)).
[56] The defendants vociferously argue that the plaintiff, by owning his shares in street name, cannot be heard to complain about the timing of the proxy materials. It is true that street name owners "take[] the risks attendant upon such an arrangement, including the risk that [they] may not receive notice of corporate proceedings. . . ." American Hardware Corp. v. Savage Arms Corp., 136 A.2d 690, 692 (Del. 1957). And while a corporation "has ordinarily discharged its [notice] obligation[] when it mails notice to the record owner," the defendants' reliance on this proposition is misplaced. Id. It is not at all clear that a four-business-day period would have allowed a record owner to receive and digest the proxy information given that the defendants gave no prior warning of the freeze-out transaction. The possibility that even record owners could not react is reinforced by the fact that not one minority share was voted and not one demand for appraisal was made.
[57] Arnold v. Soc'y for Sav. Bancorp, Inc., 678 A.2d 533, 536-37 (Del. 1996).
[58] Id. at 537.
[59] See, e.g., Ince, 1991 WL 17171, at *4 (holding that compliance with the notice statute, where plaintiffs had nearly two weeks to examine proxy materials, satisfied the disclosure requirements).
[60] Smith v. Van Gorkom, 488 A.2d 858, 893 (Del. 1985).
[61] In a supplemental disclosure situation, a shorter time period is defensible as a matter of logic. Once stockholders have received the main disclosure, their focus is centered on the transaction. Thus, it is easier to assimilate the new disclosures with the old. See, e.g., In re Dataproducts Corp. S'holders Litig., 1991 WL 165301, at *7 (Del.Ch. Aug. 22, 1991) (supplemental disclosure of the most recent financial data of the registered corporation made eight days before the meeting was not untimely).
[62] Rabkin, 498 A.2d at 1107.
[63] Id., quoting Cole v. Nat'l Cash Credit Assoc., 156 A. 183, 187-88 (1931).
[64] 285 A.2d 437, 439 (Del.1971).
[65] Alabama By-Products Corp. v. Neal, 588 A.2d 255, 258 (Del.1991) (emphasis added).
[66] In the proxy statement, the defendants offered to provide management projections to stockholders upon written request. Pl.'s Answering Br. 27 n. 7. The misguided idea that the plaintiff here could receive the proxy, absorb the information, and request and receive the projections before his decision to seek appraisal was due only serves to further support his claim that notice was insufficient.
[67] The defendants previously implied that the absence of minority voting or appraisal reflects the fair price of the transaction. Oral Argument Tr. 15-16, Nov. 21, 2005. While it is possible that reasonable minds may differ, these facts just as easily suggest that none of the minority stockholders had time to react to the proxy mailing.
[68] In re The MONY Group, Inc. S'holder Litig., 853 A.2d 661, 675 (Del.Ch. 2004).
[69] Id. at 675 n. 51.
[70] Florida courts have long recognized the utility of the equitable powers this court enjoys. See, e.g., Bell v. Smith, 159 Fla. 817, 32 So.2d 829, 832 (1947) (noting that it is "well recognized legal maxim that for every wrong there is a remedy, and it therefore follows that where one by fraud and deception has procured property or a thing of value, equity and good conscience require that he who commits such fraud shall be required to account to the person or persons whom his wrong has injured and that he may not hold the property so acquired and be enriched thereby to the detriment of those who have been deprived of a substantial right as a result of his fraudulent act or misrepresentation"). And Florida courts have long applied such powers to protect the sanctity of corporate fiduciary relationships. See generally McNabb v. Tampa & St. Petersburg Land Co., 78 Fla. 149, 83 So. 90 (1919).