977 So.2d 722 (2008)
Paul R. WILLIAMS and James F. Williams, Jr., on Behalf of Brown & Stanford Company, Inc., a Florida Corporation d/b/a J.C. Stanford & Company, Inc., Appellants,
v.
John C. STANFORD, Jr., an Individual; Victoria B. Stanford, an Individual; Brown & Stanford Company, Inc., a Florida Corporation d/b/a J.C. Stanford & Company, Inc.; J.C. Stanford & Son, Inc., a Florida Corporation; and Henderson Keasler Law Firm, P.A., a Florida Professional Corporation, Appellees.
Nos. 1D06-3701, 1D06-4808.
District Court of Appeal of Florida, First District.
March 25, 2008.
*723 J. Michael Lindell and Roger K. Gannam of Lindell, Farson & Pincket, P.A., and Michael J. Korn of Korn & Zehmer, P.A., Jacksonville, for Appellants.
Alan D. Henderson of Henderson & Maxwell, Jacksonville for Appellees John C. Stanford, Jr., Victoria B. Stanford, J.C. Stanford & Son, Inc., and Henderson Keasler Law Firm, P.A.
William G. Cooper, Jacksonville for Appellee Brown & Stanford, Inc.
Bryan S. Gowdy of Mills & Creed, P.A., Jacksonville, for Appellees.
*724 KAHN, J.
This case calls upon us to navigate the relatively uncharted terrain of a recently revised portion of Florida's statutory corporations law. We decide here whether minority shareholders who object to a total transfer of corporate assets, and who allege that the majority shareholder has engaged in a course of conduct involving improper self-dealing and malfeasance over time, are limited to the statutory remedy of offering up their shares for a fair price. We conclude that Florida law does not so constrain minority shareholders' rights in the limited cases where such shareholders raise facially sufficient and serious allegations of unfairness. In such cases, minority shareholders may seek remedies beyond appraisal. Accordingly, we partially reverse the summary judgments entered in appellees' favor and remand for further proceedings; we affirm without comment the grant of summary judgment as to appellants' claim for trade name infringement. Quite obviously, we express no view on whether appellants will ultimately be entitled to the remedies they seek.

BACKGROUND
These two consolidated appeals reflect a soured business relationship between appellants Paul and James Williams ("the Williams brothers") and appellee John C. Stanford. The Williams brothers together held a thirty percent stake in Brown and Stanford, Inc. ("B & S"), at one time a successful construction company in Jacksonville; Mr. Stanford held the remaining seventy percent of the close corporation's shares. The Williams brothers worked as carpenters for B & S from 1997 until 2002.
At some point, the Williams brothers began to harbor suspicions about Mr. Stanford's management of B & S finances. When, despite increasing revenues, the once-profitable company recorded a net loss for calendar year 2001, the Williams brothers asked Mr. Stanford to permit them to examine B & S's financial records. Mr. Stanford initially made limited records available, but two days later, on May 6, 2002, he summarily fired the brothers.
Subsequent investigation  much of it in the form of discovery  procured evidence that Mr. Stanford and his wife had charged numerous personal expenses to the company's credit card (including charges totaling approximately $48,000 to a popular home-shopping network), and had used B & S funds to build a 3,200-square-foot home for themselves and to improve property belonging to Mr. Stanford's father. The Williams brothers allege that, in all, the Stanfords misappropriated at least $250,000 in corporate funds and credit and, either intentionally or not, concealed those expenditures by hiding them in existing customers' accounts over a period of years.
On July 31, 2002, the Williams brothers demanded that Mr. and Mrs. Stanford, as B & S's directors, initiate a suit to recover the corporate funds they used for personal benefit. Not surprisingly, the Stanfords balked at such a suit. On October 23, 2002, the Williams brothers filed a shareholder-derivative action on behalf of B & S, naming the Stanfords as defendants. As this controversy matured, the Williams brothers added numerous claims and amended their complaint several times. The complaint ultimately included two counts  a claim that the Stanfords breached their fiduciary duty by paying personal expenses with company monies, and a claim that they breached their common law duty of loyalty  which are not on appeal.
In July 2003, the Stanfords retained appellee Henderson Keasler, a Florida law firm, to represent themselves individually *725 and to represent B & S in defense of the derivative action. Sometime afterward, Mr. Stanford apparently expressed his desire to stop working for B & S, in counsel's words, as "an indentured servant to [the Williams brothers,] who had accused him of stealing and pilfering his own company." On the advice of his attorneys, he resigned as B & S's qualifying agent in October 2003, but continued to collect B & S paychecks. Mr. Stanford's resignation as B & S's qualifying agent prevented B & S from conducting continued business as a construction company. Consequently, on October 31, 2003, B & S shut down its operations.
Henderson Keasler and the Stanfords, with the consult of B & S's accountant, evaluated several strategic options to effectuate Mr. Stanford's goals, including filing for bankruptcy and dissolving B & S. The Stanfords and their counsel determined, based on a 2002 appraisal that considered the company's financial situation at the time, but did not account for corporate funds used for the Stanfords' benefit, that B & S's assets were roughly equal to its liabilities. They then decided upon a transaction by which the Stanfords would form a new company, appellee J.C. Stanford & Son, Inc., and transfer B & S's assets to Stanford & Son in exchange for the latter's assumption of B & S's liabilities. The asset transfer, which appellees have loosely characterized as a merger, began on November 1, 2003; the Williams brothers happened upon the news of the asset transfer during a November 24, 2003, deposition of Mr. Stanford, at which time the transaction was well under way. Mr. Stanford, through counsel, notified appellants by letter dated December 4, 2003, that the company would purchase each brother's B & S stock for $25,000, and that appellants had a statutory right to have their shares appraised. The asset transfer to Stanford & Son, which Mr. Stanford solely owned, was completed by December 31, 2003. Stanford & Son forged ahead, commencing on November 1, 2003, the day after B & S shut down, conducting the business known as J.C. Stanford & Co., just as B & S had done up until the merger. The company maintained the same location, the same telephone number, and the same staff, equipment, and vehicles as previously used by B & S.
Appellants were now faced with a dilemma. They could exercise their appraisal rights as to all their shares (twenty-one each) and thereby seek compensation, but in the process they would divest their holding in B & S and would lose standing to maintain their derivative action. They could, in the alternative, forego their appraisal rights and risk defeat in the derivative action. The brothers chose a middle course, fashioning what they termed a "conditional election of appraisal rights." Each brother tendered twenty of his twenty-one shares with the contention that twenty shares were worth $125,000, substantially more than the $25,000 price Mr. Stanford offered for all twenty-one. In a subsequent declaratory action filed by appellees, the trial court ruled in May 2004 that the Williams brothers' "conditional" exercise of their appraisal rights was a nullity  that a shareholder entitled to appraisal must elect appraisal as to all or none of the shareholder's interest. Appellants do not challenge that ruling in this appeal.
Meanwhile, in the still-pending derivative action, the Williams brothers, having learned of the asset transfer, moved to disqualify Henderson Keasler, citing the firm's conflicted representation of B & S and the Stanfords individually. The trial court granted the motion as to Henderson Keasler's representation of B & S.
*726 On February 26, 2004, appellants filed a verified amended complaint, alleging the following claims: (I) breaches of fiduciary duty by the Stanfords, stemming from their alleged personal use of corporate assets and corporate funds; (II) breaches of fiduciary duty by the Stanfords in conjunction with their transfer of B & S's assets to Stanford & Son; (III) breaches of common law duty of loyalty by the Stanfords; (IV) trade name infringement by the Stanfords, stemming from the use of B & S's trade name by Stanford & Son; (V) breaches of fiduciary duty by Henderson Keasler, which, as B & S's corporate counsel, improperly facilitated the transfer of B & S's assets to Stanford & Son. In a second amended complaint filed in 2005, appellants added Stanford & Son as a defendant as to count II, and two Henderson Keasler lawyers as individual defendants as to count V. Appellants filed a third amended complaint in 2006, adding a sixth count for rescission and cancellation of the transfer of B & S's assets to Stanford & Son.
On March 27, 2006, the trial judge granted the defendants' motions for partial summary judgment as to counts IV and V, and granted their motion to strike the prayer for relief in count II, the claim against the Stanfords and Stanford & Son for breach of fiduciary duty stemming from the asset transfer and which sought imposition of a constructive trust on Stanford & Son's profits. On June 21, 2006, the trial court granted summary judgment as to count VI, the rescission claim, and, without further hearing, granted the Stanfords' and Henderson Keasler's motions for attorney's fees pursuant to section 57.105, Florida Statutes (2006), on the ground that counts IV and V were essentially frivolous. The court also granted appellees' motion pursuant to section 607.1331(2)(b), Florida Statutes (2006), for attorney's fees that accrued during the declaratory action regarding appellants' appraisal rights.
Appellants have appealed the summary judgments as to counts IV, V, and VI, the trial court's decision to strike the demand in count II for imposition of a constructive trust,' and the awards of attorney's fees. We affirm the summary judgment as to the trade name infringement claim, but, for the reasons that follow, we reverse the trial court's rulings as to the other claims presented on appeal and remand for further proceedings.

ANALYSIS

I.
Permeating the causes of action advanced here are the Williams brothers' specific allegations (though as yet unproven) of unfair dealing and breaches of fiduciary duty on the Stanfords' part, which culminated from several years of alleged value-destroying activities. Although appellants present numerous issues for review, the essential issue is whether Florida's "appraisal rights" statute thwarts the Williams brothers in their efforts to obtain judicial scrutiny of the transfer of B & S assets from B & S to J.C. Stanford & Son, a company Mr. Stanford created with the admitted intention of withdrawing from the business relationship with the Williams brothers. The Williams brothers also seek recovery against Henderson Keasler, alleging the law firm served the Stanfords' interest at the expense of B & S, the firm's corporate client. We conclude that appellants raise allegations which, if true, are sufficient to trigger remedial rights beyond mere appraisal. Accordingly, these allegations withstand appellees' motions for summary judgment.

A.
Section 607.1302, Florida Statutes (2003)  Florida's "appraisal rights" statute *727  generally requires minority shareholders who dissent from a major transaction or disposition of assets to seek the remedy of tendering their shares for appraisal and buy-back at a fair price:
(1) A shareholder is entitled to appraisal rights, and to obtain payment of the fair value of that shareholder's shares, in the event of any of the following corporate actions:
. . . .
(c) Consummation of a disposition of assets pursuant to s. 607.1202 if the shareholder is entitled to vote on the disposition, including a sale in dissolution but not including a sale pursuant to court order or a sale for cash pursuant to a plan by which all or substantially all of the net proceeds of the sale will be distributed to the shareholders within 1 year after the date of sale;
(d) Any other amendment to the articles of incorporation, merger, share exchange, or disposition of assets to the extent provided by the articles of incorporation, bylaws, or a resolution of the board of directors, except that no bylaw or board resolution providing for appraisal rights may be amended or otherwise altered except by shareholder approval. . . .
§ 607.1302(1), Fla. Stat. (2003). Appraisal must determine the "fair value" of the dissenting shareholder's shares. See id. "`[F]air value' means the value of the corporation's shares determined: (a) Immediately before the effectuation of the corporate action to which the shareholder objects." § 607.1301(4)(a), Fla. Stat. (2003). The trigger here is Mr. Stanford's disposition of all B & S assets. See § 607.1302(1)(d), Fla. Stat. (2003) (providing that appraisal rights are triggered by, inter alia, "disposition of assets").
In most cases, the statute denominates appraisal as a dissenting shareholder's exclusive remedy. See id. The exclusivity rule does not apply, however, where the minority shareholder has alleged that the challenged transaction "[w]as procured as a result of fraud or material misrepresentation." § 607.1302(4)(b), Fla. Stat. (2003). The Williams brothers argue their allegations of corporate malfeasance on the Stanfords' part fall under the ambit of subsection (4)(b) and constitute facially sufficient allegations that raise factual issues for resolution by a finder; of fact. The argument has force. Pending a factfinder's determination as to the truth of the Williams brothers' allegations, the brothers suggest they have shown "fraud or material misrepresentation" entitling them, in their shareholder-derivative stance, to rescission or such other curative remedies as might restore the parties to the status quo ante. We reject the concept, implicit in appellees' argument, that a buy-back at the fair value of the stock immediately before the Stanfords' disposition of corporate assets would suffice as a complete remedy.

B.
To date, no Florida court has had occasion to interpret the governing provisions of section 607.1302 in its 2003 form. As is often true, however, Delaware case law provides guidance to our construction of the statute. See, e.g., Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1459 n. 22 (11th Cir.1989) ("We rely with confidence upon Delaware law to construe Florida corporate law. The Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines."); Boettcher v. IMC Mortgage Co., 871 So.2d 1047, 1052 (Fla. 2d DCA 2004) (observing that Florida courts routinely consult Delaware case law when construing Florida statutory law governing corporations). Our review of *728 pertinent Delaware cases supplies principles of corporate law that ought to control in this case. The most significant of these holds that dissenting minority shareholders should be entitled to remedies beyond appraisal when challenging corporate transactions as allegedly not entirely fair, and certainly where such transactions have fraudulently devalued the stock.
In Weinberger v. UOP, Inc., the Delaware Supreme Court sketched, in broad strokes, the principle that a shareholder can challenge a corporate transaction premised on unfair dealing by exercising rights beyond mere appraisal. 457 A.2d 701, 711 (Del.1983). The Weinberger court wrote, in the context of a proposed merger between a parent and its subsidiary:
The concept of fairness has two basic aspects: fair dealing and fair price. The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. The latter aspect of fairness relates to the economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock.
Id. The court held that, in some cases where transactions raise questions of procedural unfairness, appraisal should not constitute a dissenting shareholder's sole remedy:
[W]hile a plaintiffs monetary remedy ordinarily should be confined to the more liberalized appraisal proceeding . . ., we do not intend any limitation on the historic powers of the Chancellor to grant such other relief as the? facts of a particular case may dictate. The appraisal remedy we approve may not be adequate in certain cases, particularly where fraud, misrepresentation, selfdealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved.

Id. at 714 (emphasis added).
The Delaware court elaborated on the Weinberger approach two years later, holding in Rabkin v. Philip A Hunt Chemical Corp. that appraisal would be an inadequate remedy for dissenting minority shareholders who alleged that corporate directors and officers, inter alia, manipulated the timing of a merger to artificially depress the cash-out price that minority stockholders would be paid for their shares post-merger. 498 A.2d 1099, 1105 (Del. 1985) ("While a plaintiffs mere allegation of `unfair dealing,' without more, cannot survive a motion to dismiss, averments containing `specific acts of fraud, misrepresentation, or other items of misconduct' must be carefully examined in accord with our views expressed both here and in [Weinberger]," citing Weinberger, 457 A.2d at 703, 711, 714). Because the plaintiffs in Rabkin alleged specific acts of unfair dealing  the defendant-directors of the acquiring company were "charged with bad faith which goes beyond issues of `mere inadequacy of price'"  the court concluded that summary judgment in the defendants' favor was inappropriate and that, if their claims of unfair dealing were true, the plaintiffs would have been entitled to equitable remedies beyond an appraisal of their shares. Id. at 1107 (quoting Cole v. Nat'l Cash Credit Ass'n, 156 A. 183, 187-88 (Del.Ch.1931)).
Beyond the Delaware Supreme Court's exposition of persuasive common law tenets, we note that a Delaware chancery court has now applied the Weinberger-Rabkin framework to its own construction of the 2003 version of section 607.1302(4)(b), Florida Statutes (2003). *729 Berger v. Intelident Solutions, Inc., 911 A.2d 1164 (Del.Ch.2006). The Delaware chancellor interpreted the Florida statutory phrase "fraud or material misrepresentation" as implicating the same entire-fairness analysis contemplated in Weinberger and Rabkin. Id. at 1171. We are inclined to align our interpretation of section 607.1302(4)(b) with that of the Berger court, which interpreted the phrase "fraud or material misrepresentation" in the statute essentially synonymously with "unfair dealing." Id.

C.
In the present case, the Williams brothers alleged sufficient acts of unfair dealing to withstand appellees' motion for summary judgment, which the trial court should have denied. Appellants alleged that Mr. Stanford suddenly and secretively transferred B & S assets to a newly, created company  J.C. Stanford & Son, Inc.  with, admittedly, the intention of effectuating a squeeze-out of the Williams brothers. Shortly before the disposition of B & S assets, Mr. Stanford resigned as B & S's qualifying agent, depriving B & S of its ability to conduct an ongoing construction business. The complaint raises more than a specter that, at the time appraisal rights would have arisen, the Williams brothers' shares could not have been worth much.
In cases such as the present controversy, involving dissenting shareholders who seek more than appraisal of their shares in the wake of objectionable transactions, courts must balance the principle that an adequate remedy should exist for a dissenting shareholder in an unfair transaction against the consideration that courts should not become bogged down in a wide range of disputes over the fairness of cash-out prices offered to minority shareholders who object to corporate transactions. We have no question that, in the present case, we are not dealing with "a fair price complaint artfully disguised in the camouflage of procedural unfairness." Berger, 911 A.2d at 1171. As appellants' counsel pointed out during oral argument, the Williams brothers' complaint over the fairness of the transfer of B & S assets stems from the fact that, at the time appellants' statutory appraisal right crystallized, the company's treasury  and thus the corresponding value of their shares  had been all but eviscerated through several years of the Stanfords' alleged misappropriations and mismanagement of corporate funds, activities the Williams brothers did not detect until the company recorded a net loss in 2001. Contingent upon proof of the allegations, appraisal at the time of the November 2003 transfer of B & S assets, effectuated after years of allegedly value-destroying activities on the Stanfords' part, would not have afforded the Williams brothers adequate recourse in this particular case. We find the allegations of the Stanfords' various activities analogous to those advanced against the defendants in Rabkin, who allegedly manipulated the timing of a merger to reduce the cash-out price paid to minority shareholders upon appraisal. See Rabkin, 498 A.2d at 1107.
Appellants' right to appraisal would have been as of the November 2003 asset transfer; we find nothing in the statute that would allow a valuation before the November 2003 transfer of assets from B & S to Stanford & Son. We thus reject any suggestion that the appraisal remedy would allow appellants to recoup the diminished value represented by the alleged wrongful transactions over a period of time before the assets transfer. Moreover, we are unable to conclude that appellees' alleged mismanagement and misappropriations of corporate funds, followed by a de facto merger, not only triggered the appraisal right, but also cemented that right as the Williamses' sole remedy. See § 607.1302(1)(c), Fla. Stat. (2003) (providing *730 that appraisal right is triggered upon, inter alia, "[c]onsummation of a disposition of assets"). Because the appraisal must be conducted with regard to the shares' value "[i]mmediately before the effectuation of the corporate action to which the shareholder objects," Section 607.1301(4)(a), Florida Statutes (2003), appraisal would likely have yielded an inequitable result. The 2003 asset transfer represents precisely the type of transaction contemplated in Rabkin and Weinberger  one so procedurally and structurally unfair that a fair price would be unattainable without independent equitable relief outside an appraisal proceeding.

D.
We interpret the "fraud or material misrepresentation" exception in section 607.1302(4)(b) to mean that a minority shareholder who alleges specific' acts of "fraud, misrepresentation, self-dealing, [or] deliberate waste of corporate assets," Weinberger, 457 A.2d at 714, may be entitled to equitable remedies beyond an appraisal proceeding if those allegations are proven true and if the alleged acts have so besmirched the propriety of the challenged transaction that no appraisal could fairly compensate the aggrieved minority shareholder. We adopt the entire fairness analysis developed in Weinberger and Rabkin to assess whether a corporate transaction avails aggrieved minority shareholders of rights beyond appraisal. The trial court erred in granting summary judgment as to appellants' claim for rescission of the transfer of assets; we reverse summary judgment and remand for factual determinations as to the truth of appellants' allegations of fraud, misrepresentation, and breaches of fiduciary duty on the Stanfords' part.

II.
Resolution of the remainder of appellants' claims on appeal largely flows from our resolution of the threshold issue above. Because we conclude that appellants alleged facts sufficient to withstand summary judgment and that, if true, entitle them to remedies other than appraisal, we also conclude the trial court erred in dismissing their claim against the Henderson Keasler law firm for breach of fiduciary duty to B & S. Citing the fact that the Stanfords waived Henderson Keasler's conflict between the firm's representation of them and its representation of B & S, the trial court relied on Rudolf v. Gray, a case from the Fifth District in which all shareholders collectively waived the conflict of interest for corporate, counsel to continue its representation of individual shareholders. 901 So.2d 148 (Fla. 5th DCA 2005). Assuming Rudolf supplies the controlling rule, we find the present case distinguishable, in that only the Stanfords, instead of all shareholders, acting for B & S, approved the conflict waiver. Any conflict of interest that arose from Henderson Keasler's representation of the Stanfords individually and its concomitant representation of B & S was therefore not properly waived, and the trial court should not have dismissed appellants' claim against the firm alleging breach of fiduciary duty.
We likewise reverse the trial court's decision to strike the Williams brothers' demand that Stanford & Son place its profits in a constructive trust for the benefit of B & S. A constructive trust is an equitable remedy available in cases dealing with breaches of fiduciary duty; such an instrument restores property to its rightful owner and prevents unjust enrichment. See, e.g., Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 422 (1927); see also Provence v. Palm Beach Taverns, Inc., 676 So.2d 1022, 1025 (Fla. 4th DCA 1996). In particular, a court may impose a constructive trust when property is acquired through fraud. See id. (quoting Quinn, 113 So. at 422). Because appellants have *731 established that genuine issues of material fact existed which cast a pall upon the transfer of B & S assets to Stanford & Son, they advanced a viable claim for the imposition of a constructive trust. The trial court dismissed their claim in part because he believed appellants sought the imposition of a trust pursuant to their claim for trade name infringement, when in actuality they sought the trust in conjunction with their claim alleging breach of the Stanfords' fiduciary duty to B & S. Accordingly, we reverse and remand with instructions that the trial court consider both appellants' claim against Henderson Keasler and their demand for the imposition of a constructive trust in light of their allegations of fraud and unfair dealing surrounding the transfer of B & S assets.

III.
Because we conclude appellants presented legally sufficient claims and reverse the summary judgment entered for appellees, we also reverse the trial court's order awarding attorney's fees to appellees pursuant to section 57.105, Florida Statutes (2006), which permits a trial court, in its discretion, to award attorney's fees to the prevailing party if it finds that "(1) . . . the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial: (a) Was not supported by the material facts necessary to establish the claim or defense; or (b) Would not be supported by the application of then-existing law to those material facts." § 57.105, Fla. Stat. (2006). For attorney's fees to be awardable, a claim must have been frivolous when filed. See Wendy's of N.E. Fla., Inc. v. Vandergriff, 865 So.2d 520, 524 (Fla. 1st DCA 2003). Appellants advanced a potentially meritorious claim supported by both their factual allegations, some of which are not in serious dispute, and the law. Because we reverse summary judgment as to count V, the claim of breach of fiduciary duty against Henderson Keasler, we also reverse the fee award pursuant to section 57.105. Although we affirm summary judgment as to Count IV, we reverse the fee award, concluding that the claim for trade name infringement, though unsuccessful, did not fall below the bar set by section 57.105.
Appellants have also appealed the award to appellees of attorney's fees incurred during the declaratory action, at the conclusion of which the court determined that election as to some shares does not constitute a valid exercise of the appraisal right. The court awarded attorney's fees to appellees pursuant to section 607.1331(2)(b), Florida Statutes (2006), which provides that, in an appraisal proceeding, the court may assess fees against the shareholder demanding appraisal "if the court finds that the party . . . acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this chapter." The trial judge abused his discretion in assessing fees against appellants because the declaratory action was not an appraisal proceeding in which the statute would apply. Rather, it was merely a proceeding, brought by appellees, to clarify appellants' rights and to. determine whether they could initiate an appraisal proceeding as to twenty of their twenty-one shares. Moreover, although the trial court ruled against appellants in the declaratory action, nothing in the record would support a finding that appellants, in seeking to clarify their rights in respect of appraisal and a simultaneous shareholder-derivative action, acted "arbitrarily, vexatiously, or not in good faith." We conclude the judge erred in finding otherwise and awarding attorney's fees pursuant to section 607.1331(2)(b), Florida Statutes (2006).

CONCLUSION
In light of the foregoing, we AFFIRM the summary judgment for appellees on *732 the Williams brothers' claim for trade name infringement. We REVERSE, however, the summary judgments entered on appellants' claim for rescission of the asset transfer and appellants' claim against Henderson Keasler for breach of fiduciary duty. We also REVERSE the order striking appellants' demand for the establishment of a constructive trust for the benefit of B & S, as well as the trial court's assessment of attorney's fees against appellants with respect to the declaratory action and counts IV and V of their complaint in the shareholder-derivative action. Appellants shall enjoy the benefit of a trial on the merits of their facially sufficient claims. The cause is REMANDED for further proceedings consistent with this opinion.
BROWNING, C.J. and ROBERTS, J, concur.