WARNER, J.
 

 The trial court enjoined a statutorily authorized appraisal process commenced by appellant to complete the reverse purchase of its stock from appellees. We reverse, as all of the elements necessary to support an injunction were not present.
 

 In 1999, Bradford Geisen founded Foreclosure FreeSearch, Inc. (“FFS”), to run a website which provides customers with information regarding real estate foreclosures all over the country. Since its formation, Geisen has been FFS’s majority shareholder and president. Appellees Gregory Sullivan and Dominic Muttillo (“M/S”) became involved with FFS’s operations at the outset. According to the stock certificates dated April 20, 2001, M/S each received 200,000 shares of FFS common stock and each became a 20% shareholder of FFS. FFS identified M/S as shareholders in its 2000 to 2003 tax returns and provided M/S with quarterly distributions and financial reports until December of 2004, at which point Geisen terminated M/S’s involvement with FFS.
 

 In June of 2005, FFS initiated a lawsuit against M/S seeking declaratory relief as to M/S’s status as shareholders, alleging that M/S fraudulently induced FFS into treating them as shareholders when M/S had not paid consideration for shares, and requesting the court to rescind any shareholder agreement. M/S filed a counterclaim against FFS and a third-party claim against Geisen alleging breach of fiduciary duty, seeking unpaid dividends and quarterly financial information pursuant to the 2001 shareholder agreement between FFS and M/S, seeking judicial dissolution of FFS, seeking disclosure of FFS’s corporate records, and making a claim of equitable estoppel against FFS for denying M/S’s position as shareholders (count V of the counterclaim).
 

 On M/S’s motion, the court bifurcated the issue of whether M/S were shareholders of FFS from the remaining counts, as it constituted a threshold issue. Discovery on the remaining issues was stayed pending the determination of shareholder status.
 

 The court scheduled the trial on the shareholder issue • to begin on May 12, 2008. On April 8, 2008, Geisen, as majority shareholder, approved and adopted by written consent a reverse stock split thereby eliminating all shares held by minority shareholders. Geisen testified that the purpose of the reverse stock split was to put an end to the litigation in the fairest way possible for everyone involved. Based upon the filing with the Florida Secretary of State, every 249,000 shares of currently outstanding stock in FFS would be converted to one share of FFS. Fractional shares would be repurchased. Because M/S each owned 200,000 shares, their shares would be repurchased as fractional shares.
 

 The reverse stock split triggered M/S’s statutory appraisal rights under section 607.1302(l)(d), Florida Statutes, which entitles a shareholder whose stock is being repurchased in a reverse split to appraisal rights and to obtain payment of the fair market value of the stock.
 

 Section 607.1322(1), Florida Statutes, provides: “If proposed corporate action requiring appraisal rights under s. 607.1302(1) becomes effective, the corporation must deliver” to all shareholders “a written appraisal notice and form.” Accordingly, FFS mailed M/S written notice on April 8, 2008, which included the details of the reverse stock split, cited the applicable statutes, and described the documents
 
 *774
 
 attached, including financial statements and a March 26, 2008, valuation report prepared by Templeton & Company, LLP. The notice warned that failure to assert appraisal rights, by completing and returning the enclosed form within the statutory period, i.e., by May 21, 2008, constituted a waiver of the process.
 
 See
 
 § 607.1823(3), Fla. Stat. The notice concluded with the following:
 

 Nothing in this letter constitutes a waiver by [FFS] or [Geisen] of any right to assert that you are not a shareholder of [FFS] or, even if you are determined by a court of competent jurisdiction to be a shareholder of [FFS], you are not entitled to appraisal rights under Florida law.
 

 M/S responded to the notice by filing an April 30, 2008, joint motion for temporary injunction in the case pending in circuit court “to prevent [FFS and Geisen] from taking any further action that will harm [M/S]” and “from proceeding with the reverse stock split contemplated in the notice” until the court makes a final determination on issues raised in M/S’s complaint against FFS/Geisen. At a hearing in early May the court prodded the parties to resolve the issue. As a result, the parties stipulated that (1) M/S were each shareholders of 18.6% of FFS’s stock as of December 31, 2000; (2) stock certificates reflecting M/S ownership of 200,000 shares each were issued in April 2001; (3) tax returns from 2000 to 2004 would not be amended; (4) compensation and other distributions paid to Geisen and M/S from 2000 to 2004 were lawful, and none of the parties would make any further claims of compensation or distribution for that period; and (5) the parties requested the court to dismiss FFS’s complaint and count V of M/S’s counterclaim. The court entered the order on the stipulation dismissing these claims with prejudice and directing the parties to proceed with discovery on the remaining issues of M/S’s counterclaim.
 

 Thereafter, M/S served on FFS a demand for production of most of the company’s financial records since 2002. They claimed that the documents were necessary in order to perform a forensic accounting of the corporation in preparation to respond to the appraisal notice. The trial court granted the requests for production.
 

 At the same time M/S filed a May 13, 2008, motion for temporary injunction seeking to enjoin the appraisal process. They claimed that they would suffer irreparable injury were the process to go forward while their counterclaims were still pending. If they lost their shares through the appraisal process, they would also lose their standing to assert a shareholder derivative action if their discovery revealed fraud committed by Geisen. After an evi-dentiary hearing in which M/S’s accountants questioned the valuation report of Templeton & Co., the trial court entered a temporary injunction finding that the April 8, 2008, notice of appraisal rights was “void” because FFS was claiming at the time that M/S were not shareholders of the corporation. The court found that the criteria to grant a temporary injunction were met. From the order granting the temporary injunction, FFS appeals.
 

 “The standard of review of trial court orders on requests for temporary injunctions is a hybrid.”
 
 E.I. DuPont De Nemours & Co. v. Bassett,
 
 947 So.2d 1195, 1196 (Fla. 4th DCA 2007). “To the extent the trial court’s order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review.”
 
 Id.
 
 (quoting
 
 Colucci v. Kar Rare Auto. Group, Inc.,
 
 918 So.2d 431, 436 (Fla. 4th DCA 2006)). “Although a trial
 
 *775
 
 court has broad discretion in granting in-junctive relief, it is an extraordinary remedy that ‘requires a clear legal right, free from reasonable doubt.’ ”
 
 Net First Nat’l Bank v. First Telebanc Corp.,
 
 834 So.2d 944, 950 (Fla. 4th DCA 2003) (quoting
 
 Dania Jai Alai Int’l v. Murua,
 
 375 So.2d 57, 58 (Fla. 4th DCA 1979)).
 

 When reviewing the trial court’s issuance of an injunction, this court must determine whether the movant established: “(1) that it will suffer irreparable harm unless the status quo is maintained; (2) that it has no adequate remedy at law; (3) that it has a substantial likelihood of success on the merits; and (4) that a temporary injunction will serve the public interest.”
 
 Broward County v. Meiklejohn,
 
 936 So.2d 742, 746 (Fla. 4th DCA 2006) (quoting
 
 Aerospace Welding, Inc. v. Southstream Exhaust & Welding, Inc.,
 
 824 So.2d 226, 228 (Fla. 4th DCA 2002)). Based upon this standard, we conclude that the injunction fails.
 

 We begin with the adequacy of the remedy at law, as our ruling on this controls the result. The court considered the notice sent to advise of appraisal rights as invalid because FFS contested M/S’s status as shareholders. We disagree. Because the notice was not “void” and the statutory procedure on appraisal rights protected M/S, an adequate remedy at law existed through the appraisal process.
 

 Pursuant to section 607.1322(1), when a reverse stock split “becomes effective, the corporation must deliver a written appraisal notice and form ... to all shareholders .... ” “Shareholder” includes a “record shareholder” which is “the person in whose name shares are registered in the records of the corporation-” § 607.1301(7), (9), Fla. Stat.
 

 M/S were shareholders within the meaning of the statute when the notice was sent. M/S attached to the joint motion for injunctive relief copies of stock certificates issued by FFS on April 20, 2001, which reflected that each held 200,000 FFS shares, and a copy of FFS’s stock transfer ledger listing both movants as shareholders. They were shareholders of record on April 8, and the statute required the corporation to send them the statutory notice of their appraisal rights. Moreover, the parties stipulated that they were shareholders as of December 31, 2000, and the court incorporated the stipulation in its order of dismissal of FFS’s declaratory judgment action. M/S cannot then turn around and claim that they were not shareholders or that their shareholder status was in doubt. When M/S made this agreement with FFS, they were aware that thirteen days remained in which to respond to the April 8 notice. Accordingly, the notice was not defective and initiated a lawful appraisal process.
 

 The trial court also concluded that M/S had no adequate remedy at law as “[m]on-etary damages are inadequate to compensate [M/S] for the loss of their statutory rights in this instance, which includes their right to participate fully in a lawful, proper appraisal process[
 
 1
 
 ] and the other derivative rights that [M/S] would lose as result.” The court noted that having been deprived of FFS’s financial records for the past few years, M/S could not make an informed decision regarding whether to exercise their appraisal rights within the statutory period. Contrary to the court’s position, the appraisal process provides an adequate remedy at law, and the court had additional means to protect any derivative rights.
 

 “Statutory proceedings are regarded as law actions .... ”
 
 Adams v. Dade
 
 
 *776
 

 County,
 
 202 So.2d 585, 586 (Fla. 3d DCA 1967). Section 607.1301, et seq., Florida Statutes, provides a variety of remedies for minority shareholders including the right to obtain a judicial determination regarding the fairness of the price and procedure by which the company determined the price.
 

 A company which implements a reverse stock split must provide minority shareholders notice of the appraisal rights.
 
 See
 
 § 607.1302(l)(d), Fla. Stat. The notice must include “[t]he corporation’s estimate of the fair value of the shares” and enclose a form on which the shareholder can indicate how he or she wants to proceed. § 607.1322(2)(b)3., Fla. Stat. The corporation must direct the shareholder to return the form in forty to sixty days or waive all appraisal rights. § 607.1322(2)(b)2., Fla. Stat. If the shareholder “is dissatisfied with the corporation’s offer,” he or she “must notify the corporation on the form provided ... of that shareholder’s estimate of the fair value of the shares and demand payment of that estimate plus interest.” § 607.1326(1), Fla. Stat. A corporation which disputes the amount proposed by the shareholder “shall commence a proceeding within 60 days after receiving the payment demand ....”§ 607.1330(1), Fla. Stat. If the corporation fails to initiate a judicial proceeding, the “shareholder who has made a demand ... may commence the proceeding in the name of the corporation.”
 
 Id.
 

 “The jurisdiction of the court in which the proceeding is commenced ... is plenary and exclusive.” § 607.1330(4), Fla. Stat. The court is authorized to appoint an appraiser who will “receive evidence and recommend a decision on the question of fair value” and “have the powers described” by the court.
 
 Id.
 
 “The shareholders demanding appraisal rights are entitled to the same discovery rights as parties in other civil proceedings.”
 
 Id.
 
 The court is charged with determining the fair value of the shares “[ijmmediately before the effec-tuation of the corporate action to which the shareholder objects” based on “customary and current valuation concepts .... ” § 607.1301(4), Fla. Stat.
 

 Pursuant to the foregoing statutes, M/S can obtain a judicial determination of the stock’s value and will not be forced to accept the offer contained in the notice or to accept the valuation report’s findings. M/S’s concerns regarding their lack of access to FFS’s books is meritless as M/S would be “entitled to the same discovery rights as parties in other civil proceedings.” § 607.1330(4), Fla. Stat. It is worth noting that M/S’s counterclaim demands production of the financial records of FFS. Through the appraisal process M/S can receive relevant information regarding the corporation.
 

 M/S complain, however, that because they have been deprived of access to FFS’s financial records, they cannot make a good faith estimate of the value of the company. They fear that the court could tax them with attorney’s fees, should their estimate of value be rejected through the process. Indeed, section 607.1331(1) provides: “[T]he court may assess costs against all or some of the shareholders demanding appraisal, in amounts the court finds equitable, to the extent the court finds such shareholders acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this chapter.” An award of attorney’s fees is not mandatory. Furthermore, we think it highly unlikely that a court would find an excessive demand in and of itself, made by a shareholder wrongfully deprived of the corporation’s financial records for several years, a demand made “arbitrarily, vexatiously, or not in good faith.” The fact that attorney’s fees may be available for
 
 *777
 
 vexatious litigation during the appraisal process, however, does not render it an inadequate remedy at law.
 

 The appraisal must value the corporation at the date “[ijmmediately before the effectuation of the corporate action to which the shareholder objects.” § 607.1301(4)(a), Fla. Stat. M/S seek to stop the appraisal process because they claim that it would be unfair and would prevent them from raising any potential shareholder derivative claims. They argue that the court was correct in enjoining the appraisal process because it would produce an unfair result.
 

 The remedy, however, is not to stop the appraisal process but to provide additional relief. In most cases, the appraisal statutes “denominate[ ] appraisal as a dissenting shareholder’s exclusive remedy.”
 
 Williams v. Stanford,
 
 977 So.2d 722, 727 (Fla. 1st DCA 2008). However, “[a] shareholder entitled to appraisal rights under this chapter may ... challenge a completed corporate action for which appraisal rights are available” where the corporate action “[w]as procured as a result of fraud or material misrepresentation.” § 607.1302(4)(b), Fla. Stat. Applying this exception, the court in
 
 Williams
 
 expressly held that minority shareholders in M/S’s position “may be entitled to equitable remedies
 
 beyond
 
 an appraisal proceeding.” 977 So.2d at 730 (emphasis supplied).
 

 In
 
 Williams,
 
 the Williams brothers held a 30% stake and John Stanford held a 70% stake in a closely-held corporation, Brown and Stanford (“B & S”), which provided construction services. After working as carpenters for B & S for several years, the Williams brothers asked for various financial records upon becoming suspicious that Stanford was diverting company money for personal use. Stanford refused to disclose the requested information and terminated the brothers.
 

 The brothers filed a shareholder-derivative suit on behalf of B
 
 &
 
 S against Stanford for breaching various duties. While the suit was pending, Stanford decided to form a new company, Stanford & Son, and merged the assets and liabilities of B & S into it. Stanford notified the brothers in writing, under section 607.1322, of their appraisal rights.
 

 Faced with losing their derivative claim, the brothers waived their appraisal rights under the statutory scheme by not responding to the notice in a timely fashion. Unlike M/S, the brothers did not attempt to enjoin the appraisal process.
 

 The brothers amended the complaint, realleging the breach of duty claims arising from Stanford’s diverting company funds for personal use and adding causes of action for breach of various duties against Stanford based on the merger and for rescission of the merger. The trial court granted Stanford’s motion for summary judgment as to all claims relating to the merger, concluding that the brothers had no remedy after having waived the appraisal process.
 

 The
 
 Williams
 
 court held that summary judgment was inappropriate because the brothers had a viable claim under section 607.1302(4)(b). Where the acts of waste of the corporate assets make the valuation on the appraisal date unfair, “a minority shareholder who alleges specific acts of ‘fraud, misrepresentation, self-dealing, [or] deliberate waste of corporate assets,’ may be entitled to equitable remedies beyond an appraisal proceeding if the alleged acts have so besmirched the propriety of the challenged transaction that no appraisal could fairly compensate the aggrieved minority shareholder.”
 
 Williams,
 
 977 So.2d at 730 (quoting
 
 Weinberger v. UOP, Inc.,
 
 457 A.2d 701, 714
 
 *778
 
 (Del.1983)).
 
 [2]
 
 Thus, the court reversed the summary judgment and reinstated the brothers’ claims against Stanford for breach of fiduciary duty, misappropriation of corporate assets, and the imposition of a constructive trust against the new company.
 

 In this case M/S’s counterclaim includes one count of breach of fiduciary duty against Geisen for misappropriation of corporate funds and one against the corporation for wrongfully withheld distributions of profits. Under the
 
 Williams
 
 analysis, those counts may constitute relief beyond the appraisal process available to M/S if they are able to prove that the acts of Geisen “have so besmirched the propriety of the challenged transaction that no appraisal could fairly compensate the aggrieved minority shareholder.”
 
 Id.
 
 Those actions remain pending. The remaining counts demand the production of corporate records and a judicial dissolution of the corporation. The appraisal process does prevent a judicial dissolution by eliminating their shareholder interest, but it would permit full discovery and production of the corporate records. Because M/S are not deprived of their ability to seek relief beyond the appraisal if they satisfy the
 
 Williams
 
 analysis, they have an adequate remedy at law.
 

 The majority shareholder has a right to engage the appraisal process to eliminate the rights of dissenting shareholders and put an end to corporate strife. The process must produce a fair result for the minority shareholders. However, the minority shareholders cannot prevent the elimination of their interests and prolong the corporate strife. The availability of additional relief under the
 
 Williams
 
 analysis provides the necessary protection and fairness to the minority shareholders where the majority has engaged in bad conduct and fraudulently diluted the value of the corporation.
 

 Because we conclude that M/S have an adequate remedy, we reverse the temporary injunction of the appraisal process. The temporary injunction was entered on May 21, 2008. According to the representations at the various hearings, M/S had until May 27, 2008, to give notice of their participation of the appraisal process. We therefore direct that upon remand, M/S have seven days from the date of our mandate to exercise their rights in the appraisal process.
 

 Reversed and remanded for further proceedings.
 

 POLEN and HAZOURI, JJ., concur.
 

 [1]
 

 . As we explained above, the statutory process initiated by the April 8 notice was lawful.
 

 [2]
 

 . Noting that no Florida court had interpreted the governing statutory provisions, the court looked to Delaware case law for guidance.
 
 Id.
 
 at
 
 Ill
 
 ("We rely with confidence upon Delaware law to construe Florida corporate law. The Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines.”) (quoting
 
 Int'l Ins. Co. v. Johns,
 
 874 F.2d 1447, 1459 n. 22 (11th Cir.1989)).