# Third District Court of Appeal

## State of Florida

Opinion filed August 23, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-338
Lower Tribunal No. 12-40288

_____

**Carlos Omes, as Personal Representative of the Estate of Alejandro "Alex" Omes,**
Appellant,

vs.

**Ultra Enterprises, Inc.,**
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Jennifer D. Bailey, Judge.

Marko & Magolnick, P.A. and Joel S. Magolnick, for appellant.

Damian & Valori LLP and Peter F. Valori and Russell Landy; Akerman LLP and Gerald B. Cope, Jr., for appellee.

Before ROTHENBERG, C.J., and SUAREZ and LOGUE, JJ.

SUAREZ, J.

This appeal arises out of a bench trial in which the issues were presented through testimonial evidence and numerous documents. The numerous issues are

complex and the trial court issued a 16-page findings of fact and law. The trial court's order is specific, well-researched and reasoned, and, in our view, correct in all aspects. We address this opinion only to the issues raised on appeal and have attempted to boil them down and address each as simply and directly as possible.

Alex Omes and Russell Faibisch founded Ultra Enterprises, Inc. ["UEI"] for the purpose of holding the intellectual property of the Ultra Music Festival ["Ultra"], founded in 2002. UEI owns the trademarks and licenses associated with Ultra. UEI used other corporate entities for producing the music festival, licensing and promotion. Festival Productions and Ticket Junkie were two of these entities. UEI held no stock in either entity but Omes was a shareholder in both.

Omes and Russell were the only two partners of UEI until 2005, when they brought in Russell's brother, Charles Faibisch, who also brought with him a much needed cash infusion. The three signed a Memorandum of Understanding ["MOU"] in 2005. That document joined Charles as a shareholder, gave him 300 shares, set forth the general duties of each person, and stated an "intent" that Omes and Russell be co-managers. Omes served as President and Russell as chairman of the Board of Directors. In 2010, Adam Russakoff joined Ultra as a 10% shareholder.[1] That same year, the Board hired a new accountant, who found the books to be in total disarray. The accountant found no fraud or misconduct, just

[1] UEI's ownership was at that time apportioned between Russell Faibisch (30%), Alex Omes (30%), Charles Faibisch (30%), and Adam Russakoff (10%).

2

poor recordkeeping. The accountant was able to reconstruct and reconcile UEI's books, which became the basis for the valuation in this case.

As Ultra became more successful, the record indicates that Omes began using his Ultra contacts and influence to set up side deals for himself. This situation progressed to the point where Russell became concerned that Omes was diminishing the value and uniqueness of Ultra by using his Ultra connections and reputation to compete with Ultra on the side. In August 2010, the UEI Board of Directors removed Omes as President, citing self-dealing at UEI's expense and failure to communicate and share equally in corporate decision-making. Russell became President. Omes then became a minority shareholder at 30%, without office.[2]

On July 11, 2012, because of Omes's continuing actions, the Board of Directors by unanimous written consent recommended that the shareholders amend the articles of incorporation to prohibit self-dealing and competition with UEI by UEI shareholders, and to provide UEI with the right to redeem the shares of, *inter alia*, a shareholder who has competed with UEI. Also on July 11, 2012, those shareholders owning a majority of the common stock of UEI (70%) accepted the

---

[2] Omes continued to promote personal side deals and music festivals. He planned a major music festival to compete with Ultra, promoted it as an Ultra co-founder, and sold tickets. The event never took place, and Omes never reimbursed ticketholders.

recommendation of the Board of Directors and amended the articles to so provide. The shareholders did this by a Written Consent. Following the amendment, on the same day, the directors of UEI voted unanimously to redeem Omes's shares based on his self-dealing and competing personal businesses. Omes was notified that same day of the Board's actions and of his right to appraisal to determine the value of his shares. The form provided to Omes explained that in order to exercise his appraisal rights, he needed to return the documents, an Exercise of Appraisal Rights form and Stock Power form, on or before August 20, 2012. On August 20, 2012, Omes served Ultra with his Exercise of Appraisal Rights form, which stated that Omes exercised his appraisal rights and tendered his stock but did not accept UEI's valuation of $1,200 per share. Omes instead offered a counter-valuation of $111,111.11 per share. UEI then ceased doing business with Ticket Junkie and Festival Productions and contracted with entities having no connection with Omes. Omes then filed the underlying suit against UEI, and Russell and Charles Faibisch, and Adam Russakoff as individuals, invoking the appraisal process while at the same instance objecting to it.

In response, UEI filed a one-count complaint to establish the fair value of Omes's shares. See § 607.1330(1), Fla. Stat. (2016). The trial court, after taking evidence and hearing argument of the parties, concluded that 1) the appraisal process was properly invoked, and found in favor of UEI; 2) dissolution was not

4

available as a remedy where there was no deadlock between directors; 3) the appraisal value of Omes's stock by Omes's appraiser was rejected by the trial court as without realistic basis, and the appraisal of Omes's stock by UEI's appraiser was adopted by the trial court as supported by competent substantial evidence. Carlos Omes ["Estate P.R."] is the personal representative of the Estate of Alex Omes, who died during the pendency of the litigation below. He seeks to reverse the trial court's conclusions and to be installed as Alex Omes's replacement as President of UEI.

The Estate P.R. argues in this appeal that the MOU is in reality a shareholder agreement. The trial court rejected that argument, as do we. The MOU is not, according to section 607.1302(4), Florida Statutes (2016), an article of incorporation, bylaw, or a board of director's resolution. The MOU does not fall within any statutory exception. As the trial court pointed out, the MOU may act as a shareholder agreement, but it did not prohibit the corporate actions at issue here. See Foreclosure FreeSearch, Inc. v. Sullivan, 12 So. 3d 771, 778 (Fla. 4th DCA 2009) ("The majority shareholder has a right to engage the appraisal process to eliminate the rights of dissenting shareholders and put an end to corporate strife. The process must produce a fair result for the minority shareholders.").

The Estate P.R. also argues that Omes should have had pre-consent and post-consent notice of the Board's amendments to the articles of incorporation.

5

The trial court determined that there was no procedural prejudice to Omes and no evidence the outcome would have been any different. As the trial court stated, "that to return these shareholders to square one so that a pre-vote notice can be given to Omes's Estate and a new and fruitless vote be taken with notice before and after, would be inequitable and is unnecessary to protect any rights of any party in this case." In any event, section 607.0704, Florida Statutes (2016), provides that, unless otherwise provided in the articles of incorporation, a majority of the shareholders of a corporation can take action without a meeting, without prior notice, and without a vote. The only requirement is that notice must be given to shareholders who have not consented in writing, or who were not entitled to vote, within ten days. Here, the Board supplied Omes with the notice the same day the action occurred.

Finally, the Estate P.R.'s claims of corporate error are barred; by electing to participate in the appraisal process and returning the duly signed "Exercise of Appraisal Rights" and "Stock Power" forms, the trial court properly found that Omes lost all rights as a shareholder pursuant to section 607.1323(1), and instead became entitled to payment of fair value for the shares.[3] This is dispositive of the appeal.

---

[3]Section 607.1323(1), Florida Statutes (2016), provides, in pertinent part, "Once a shareholder deposits that shareholder's certificates or, in the case of uncertificated shares, **returns the executed forms, that shareholder loses all rights as a shareholder** . . . . " (emphasis added).

Affirmed.